[S.F. No. 24726. Nov. 21, 1984.]

SAN FRANCISCO FOUNDATION, Petitioner, v.
THE SUPERIOR COURT OF MARIN COUNTY, Respondent;
COUNTY OF MARIN et al., Real Parties in Interest.

288

COUNSEL

Heller, Ehrman, White & McAuliffe, Stephen V. Bomse, Jessica S. Pers, Catherine P. Rosen and Annie M. Wong for Petitioner.

Anita P. Arriola, Robert L. Gnaizda, Nancy A. Weston, Sidney M. Wolinsky, Richard H. Borow, David Siegel and Irell & Manella as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Douglas J. Maloney, County Counsel, John K. Van de Kamp, Attorney General, Carole Ritts Kornblum, Assistant Attorney General, Peter K. Shack and Yeoryios C. Apallas, Deputy Attorneys General, Thelen, Marrin, Johnson & Bridges, Donald D. Roberts, George T. Argyris, Wynne S. Carvill and Marshall W. Krause for Real Parties in Interest.

OPINION

**REYNOSO, J.**—The San Francisco Foundation seeks a writ of mandate to compel respondent Marin County Superior Court either to order proceedings pertaining to the "Buck trust" transferred to a county outside the San Francisco Bay Area or to request the Chairperson of the Judicial Council to assign a disinterested judge from a neutral county to hear the proceedings. We shall conclude that a writ should issue granting the latter form of relief.

I

The Buck trust was created by the will of Beryl Buck, a Marin County resident, who died in 1975, leaving the bulk of her estate to be held in trust and used for providing "care for the needy in Marin County" and for other charitable, religious, or educational purposes in that county. In 1979 and 1980 respondent court ordered the estate assets transferred to Wells Fargo Bank and John Elliot Cook as trustees for management and investment, with instructions to distribute principal and interest as directed by petitioner foundation, acting through its distribution committee. The will names the foundation as the entity in charge of distribution and requires that all income be distributed "not later than the end of the year following the year of receipt."

In 1980 the Attorney General filed a petition requesting that the foundation be ordered to file annual reports concerning its administration of the trust. The request was granted. In 1981 the County of Marin was authorized to intervene as a representative of the trust beneficiaries. Both the Attorney General and the county are named in the present proceeding as real parties in interest.

On January 30, 1984, the foundation petitioned under Probate Code section 1120 for an order that "the Buck Trust be modified so that [after a three-year transition period] the income may be distributed throughout the entire Bay Area served by the foundation, with preference for funding from the Buck Trust to be given to grant proposals for charitable purposes in Marin County." The petition alleges that the value of the trust assets at the time of Mrs. Buck's death was $10 to $12 million with a projected annual income of "much less than $2 million," whereas the anticipated annual trust income in 1984-1987 will be at least $27 million. Exhibits before us establish that the value of the trust assets on June 30, 1983. was $360 million, and that the area served by the foundation (throughout which the petition seeks authority to distribute trust income) consists of the City and County of San Francisco and the Counties of Alameda, Contra Costa, and San Mateo, as well as Marin County.

The County of Marin responded on February 14, 1984, by filing the following: (1) A motion to remove the foundation as trustee (Prob. Code, § 1123.5), essentially on the ground that the foundation's activities in connection with its petition for modification constituted a breach of trust and rendered it unfit. (2) A motion to prohibit the foundation from using trust funds "in its attempt to break the Buck Trust" or in opposing the petition for its removal as trustee. (3) A motion to disqualify the law firm representing the foundation from acting in Buck trust proceedings on the ground

that a partner of the firm was a member of the foundation's distribution committee who voted to file the modification petition, thereby giving rise to a conflict of interest.

On February 24, 1984, the foundation filed a motion for the transfer of all Buck trust proceedings "to a neutral county." The motion was based on Code of Civil Procedure sections 394 and 397, subdivision 2 (hereafter section 394 and section 397(2) respectively) and Probate Code section 1128. Section 394 provides for the transfer to a neutral county of an action or proceeding brought by a county against a resident of, or a corporation doing business in, another county. Section 397(2) authorizes a change in the place of trial when "there is reason to believe that an impartial trial cannot be had" in "the court designated in the complaint." Probate Code section 1128 authorizes petitions to transfer proceedings pertaining to a testamentary trust to another county. Probate Code section 1129 directs the court to order such a transfer if it will "be for the best interests of the estate" or will facilitate economic and convenient administration of the trust. The principal showing in support of the motion comprised evidence of widespread expressions by public officials and other prominent citizens of Marin County, and by county newspapers, of extreme hostility toward the foundation's petition to allow distribution of some Buck trust income outside Marin County.

Both the Attorney General and Wells Fargo Bank (an investment trustee of the Buck trust) responded to the foundation's motion by recommending that if the motion were found meritorious, there nonetheless be no transfer of proceedings to another county, but instead the Chairperson of the Judicial Council be requested to appoint a disinterested judge from a neutral county to hear Buck trust matters. Section 394 provides for such a request "in lieu of transferring the cause" when "the action or proceeding is one in which a jury is not of right." Consequently, in its memorandum replying to the county's vigorous opposition to its motion, the foundation stated that it was agreeable to the appointment of a neutral outside judge instead of a change of venue.

At the hearing on the motion, on March 12, 1984, the foundation disclaimed any intention to seek disqualification of any of the Marin County judges under section 170 of the Code of Civil Procedure. Instead it argued that Marin County "is now so aflame with sentiment on this issue" that any judge of the county cannot "fairly be asked as a human being to put all that aside." At the conclusion of oral argument, the court denied the motion from the bench. This court has stayed further proceedings pertaining to all

of the foregoing motions and petitions pending final determination of this writ proceeding.[1]

## II

We think that the foundation is entitled to relief under section 394. Subdivision (1) of that section provides in pertinent part: "Whenever an action or proceeding is brought by a county . . . against a resident of another county . . . or a corporation doing business in the latter, the action or proceeding must be, on motion of either party, transferred for trial to a county . . . other than the plaintiff . . . and other than that in which the defendant resides, or is doing business, or is situated . . . . When the action or proceeding is one in which a jury is not of right, . . . then in lieu of transferring the cause the court in the original county may request the chairman of the Judicial Council to assign a disinterested judge from a neutral county to hear said cause and all proceedings in connection therewith."

Section 394 applies to probate court proceedings "[e]xcept as otherwise provided by [the Probate] [C]ode or by rules adopted by the Judicial Council." (Prob. Code, § 1233.) The only provisions cited by the county in connection with such applicability of section 394 are Probate Code sections 1123.5 and 1123.7, under which the county filed its petition to remove the foundation as trustee. Those sections state that "the court sitting in probate which has jurisdiction over a testamentary trust shall have power to remove a trustee" under certain conditions (Prob. Code, § 1123.5) and that "[t]he jurisdiction and procedure provided by Sections 1123.5 and 1123.6 [which pertains to custody of assets pending hearing] shall be exclusive" (Prob. Code, § 1123.7). The county contends that Probate Code sections 1123.5 and 1123.7 make respondent court, as the court sitting in probate having jurisdiction over the Buck trust, the only court that can remove the foundation as trustee. The foundation, on the other hand, contends that the sections require only that a removal proceeding be commenced in the probate court having jurisdiction over the trust and do not interfere with subsequent changes of venue under other statutes, and that a contrary construction would deny constitutional rights of due process.

---

[1]In addition to the briefs of the parties, an amicus curiae brief was filed in the Court of Appeal, and another in this court, by a group of 46 "objector-beneficiaries," consisting of 28 charities and 18 Marin County residents who since November 1981 have been seeking distribution of Buck trust funds throughout the Bay Area. Their motion to intervene in Buck estate proceedings was denied in 1982, and an appeal from that denial is now pending. The objector-beneficiaries state that if they are allowed to become parties, they will file their own motion for change of venue. Their brief before this court primarily argues that all Marin County judges lack the impartiality required by Code of Civil Procedure section 170 and the Code of Judicial Conduct because of the judges' residence in that county and their inevitable involvement in professional and civic activities there.

It is neither necessary nor appropriate for us to consider those contentions, however, because they are relevant only if the relief sought is the transfer of proceedings to a different court. ■ Probate Code sections 1123.5 and 1123.7 do not bar assignment of a different judge to the same court under section 394. Here the petition for the writ expressly prays in the alternative for appointment of a disinterested judge from a neutral county to preside over the contested Buck trust proceedings in Marin County. The Attorney General and Wells Fargo Bank indicate they would prefer that form of relief as against transfer to another county with its accompanying inconvenience to counsel, witnesses, and other interested persons. The foundation concedes that the appointment of the outside judge would satisfy its objectives in petitioning for the writ.

The provisions for assignment of a different judge apply "[w]hen the action or proceeding is one in which a jury is not of right" (§ 394). Neither the foundation's petition for modification nor the county's petition and motions in response raise issues giving rise to any right to a jury trial. (*Estate of Van Deusen* (1947) 30 Cal.2d 285, 291-292 [182 P.2d 565]; see *Estate of Beach* (1975) 15 Cal.3d 623, 642-643 [125 Cal.Rptr. 570, 542 P.2d 994].)

### III

Section 394 applies in this case (1) only to proceedings "brought by" the county "against" the foundation and (2) only if the foundation is a resident of, or corporation doing business in, a different county. ■ Clearly the county's petition to remove the foundation as trustee instituted a proceeding brought by the county against the foundation within the meaning of section 394. The county argues that section 394 does not apply because the removal proceeding "does not involve a cause of action belonging to the county as such" but relates to the probate court's supervisory powers and could have been initiated by any interested person or by the court on its own motion. The county contrasts its removal petition under Probate Code section 1123.5 with a civil action to remove a trustee under Civil Code section 2283 (now applicable only to nontestamentary trustees), which is deemed "personal in character" for venue purposes (*Walker* v. *Wells Fargo Bank etc. Co.* (1937) 8 Cal.2d 447, 449 [65 P.2d 1299]; *Jackson* v. *Superior Court* (1963) 223 Cal.App.2d 823 [36 Cal.Rptr. 175]). But section 394 was amended in 1915 to apply to a "proceeding" as well as an action (Stats. 1915, ch. 434, § 1, p. 721), and the venue provisions of title 4, part 2, of the Code of Civil Procedure (§§ 392-404.8) are among those made generally applicable to probate proceedings by Probate Code section 1233. (See *People* v. *Almy* (1873) 46 Cal. 245; *In re Murphy's Guardianship* (1893) 3 Coffey's Prob. Dec. 103.) The proceeding was in fact "brought" by the county's filing its

petition for removal, regardless of the right of any other entity to have commenced a similar proceeding or to carry on with the present proceeding if the county were to withdraw from it.

The applicability of section 394 to the foundation's petition to modify the trust is perhaps less obvious. The foundation argues that if we order relief under section 394 with respect to the county's petition for removal of trustee, we need not decide the applicability of the section to the foundation's petition as such because the two petitions are so related to each other that relief granted as to the one would necessarily apply to the other. The foundation relies for that contention, however, on holdings that one defendant's right to a change of venue under section 394 requires a similar change as to codefendants (*Westinghouse Electric Corp.* v. *Superior Court* (1976) 17 Cal.3d 259, 275 [131 Cal.Rptr. 231, 551 P.2d 847]) and that a section 394 change of venue as to one cause of action must include a change as to another cause of action in the same complaint (*Morrison* v. *Superior Court* (1980) 100 Cal.App.3d 852, 855 [161 Cal.Rptr. 169]). Here the connection between the two petitions is materially less close. The determination of each petition will give rise to a separate appealable order. (Prob. Code, § 1240, subds. (b), (k); see *Estate of Loring* (1946) 29 Cal.2d 423, 428 [175 P.2d 524].) Moreover, the two petitions will not necessarily be the subject of a single hearing or set of hearings even though heard by the same judge.

We think, however, that in the posture of this case, the litigation between county and foundation over whether to modify the trust is itself a "proceeding brought by the county." The foundation's "petition for modification of the terms of the trust" was not filed against the county but was a request for instructions by the probate court in the exercise of its supervisory powers. (Prob. Code, § 1120; *Estate of Loring, supra,* 29 Cal.2d 423.) Though the county was entitled to notice of the petition by virtue of the prior order allowing it to intervene, the petition asserted no claim against the county, mentioned no dispute between the foundation and the county, and indeed did not refer to the county at all. Thus, the present controversy between the foundation and the county over the foundation's petition for modification was initiated not by the foundation but by the county in filing papers in opposition to the petition. Although the exhibits before us include no written opposition by the county to the petition as such (though the existence of such opposition is not negated), the copies before us of related papers filed by the county—the petition to remove the foundation as trustee, the motion to prohibit the foundation's use of trust funds in connection with its petition for modification, and the motion to disqualify the foundation's counsel, all accompanied by supporting points and authorities—make unmistakably clear that the county does oppose and will oppose the petition for modification with all the evidence, arguments, and legal strategies its counsel can muster.

■ "As we have long held, the purpose underlying the mandatory change of venue provision in section 394 ' "is to guard against local prejudices which sometimes exist in favor of litigants within a county as against those from without and to secure to both parties to a suit a trial upon neutral grounds." ' (*Finance & Construction Co.* v. *Sacramento,* 204 Cal. 491, 493 [269 P. 167].) Furthermore, as remedial legislation the section is to be liberally construed. (*Id.*)" (*Garrett* v. *Superior Court* (1974) 11 Cal.3d 245, 248 [113 Cal.Rptr. 152, 520 P.2d 968].) ■ Since it was the county, not the foundation, that brought the dispute between the county and the foundation over modification of the trust before the court, we conclude that the county must be deemed to have "brought" the proceeding for resolution of that dispute "against" the foundation for purposes of applying section 394.

## IV

■ Applicability here of the pertinent provisions of section 394 requires not only that the proceedings in respondent court be proceedings brought by the county against the foundation but also that the foundation qualify as "a resident of another county . . . or a corporation doing business in the latter" (§ 394). We now consider whether the foundation so qualifies.

The foundation is not a corporation. Code of Civil Procedure section 395.2 provides, however, that if an unincorporated association files a statement with the Secretary of State under Corporations Code section 24003 listing its principal office in California, it will be treated for venue purposes as a corporation with its principal place of business at the office listed in the statement. The foundation filed such a statement, listing its San Francisco office as its principal office, on February 24, 1984, the same day on which it filed its notice of motion for change of venue.

Respondent court ruled that the filing of the certificate was too late to affect applicability of section 394 to the case, apparently accepting the county's contention that the foundation's statement had to be determined as of the commencement of the proceedings as to which it was seeking a change of venue. The cases on which the county relies, however, hold only that "[t]he right of the moving party to a change [of venue] depends upon the conditions existing *at the time the demand is made.*" (Italics added.) (*Kallen* v. *Serretto* (1932) 126 Cal.App. 548, 549 [14 P.2d 917]. Accord, *McClung* v. *Watt* (1922) 190 Cal. 155, 159 [211 P. 17]; *Haurat* v. *Superior Court* (1966) 241 Cal.App.2d 330, 337 [50 Cal.Rptr. 520]; 2 Witkin, Cal. Procedure (2d ed. 1970) Actions, § 425, pp. 1256-1257.) Thus, even under the rule invoked by the county, the filing of the certificate concurrently with

the notice of motion of change of venue was sufficient to establish the status of the foundation on the basis of which the motion should be considered.

That rule, however, was applied in the authorities cited to prevent the party *opposing* the proposed change of venue from altering the conditions on which proper venue depends, e.g., by amending pleadings, after the motion for change of venue was made. Here, that is not the situation, and different principles apply.

■ The main purpose of Code of Civil Procedure section 395.2 is to enable unincorporated associations to protect themselves from exposure to suit at the county of residence of any member by filing a designation of principal office address (Corp. Code, § 24003.) (*Mosby* v. *Superior Court* (1974) 43 Cal.App.3d 219, 229 [117 Cal.Rptr. 588]; legis. committee com.—Sen., Deering's Ann. Code Civ. Proc. (1972 ed.) foll., § 395.2.) Achievement of that salutary purpose would be substantially curtailed if the association could not obtain the benefits of the statute by filing the statement after suit against it is commenced. An analogy may be found in the fictitious business name statute (Bus. & Prof. Code, §§ 17900-17930), which provides that the filing of a fictitious business name certificate is a prerequisite to suing on a contract made in such name and is construed to permit compliance at any time before trial. (Bus. & Prof. Code, § 17918; *Rudneck* v. *Southern California M. & R. Co.* (1920) 184 Cal. 274, 280-283 [193 P. 775]; *Kadota Fig Assn.* v. *Case-Swayne Co.* (1946) 73 Cal.App.2d 796, 804 [167 P.2d 518]; Law Revision Com. com. Deering's Ann. Bus. & Prof. Code (1972 ed.) foll. § 17918; cf. *Traub Co.* v. *Coffee Break Service, Inc.* (1967) 66 Cal.2d 368, 370 [57 Cal.Rptr. 846, 425 P.2d 790] [plaintiff corporation's lack of capacity to sue because of nonpayment of taxes held cured by reinstatement before trial].) ■ We conclude, accordingly, that the filing of the foundation's statement under Corporations Code section 24003 established its right to be treated for venue purposes as if it were a corporation having its principal place of business in San Francisco.

■ Yet, not all corporations that have their principal places of business outside the county by which and in which they are sued are entitled to relief under section 394. It is true that "[a] literal application of the statute to [such corporations] would permit each of them conducting any business outside of [the forum] [c]ounty to obtain a change of venue regardless of how much business it also conducted inside [that] [c]ounty. However, the statute cannot be so mechanically construed, but must be interpreted in light of its purposes." (*Westinghouse Electric Corp.* v. *Superior Court, supra,* 17 Cal.3d 259, 268.) Accordingly, a defendant corporation's rights under section 394 may be barred because of the existence, nature, and extent of its activities within the forum county. Activities sufficient to raise such a

bar are referred to as "doing business" within the county (*id.*, at pp. 269-270; *City of L. A. v. Pac. Tel. & Tel. Co.* (1958) 164 Cal.App.2d 253 [330 P.2d 880]), but those activities must be measured by "a definition of doing business in light of the purposes of section 394, which . . . is designed to insure a fair trial by protecting against local bias" (*Westinghouse, supra,* 17 Cal.3d at p. 271).

Before examining that "doing business" standard and its applicability in this case, we summarize the facts concerning the foundation's activities within and outside of Marin County. The foundation was established in 1948 as a community trust serving five counties of the San Francisco Bay Area. Its executive offices are in San Francisco, where its distribution committee meets and decides on all grant applications including those related to the Buck trust. In addition to the $360 million in the Buck trust, the foundation administers assets in trusts from numerous other donors totaling almost $130 million. It was the distribution committee's decision that the foundation file its pending petition to modify the Buck trust to permit a part of the trust income to be spent outside of Marin County.

In 1982-1983 the foundation paid $25.5 million on grants in Marin County and $10 million on grants in the other four Bay Area counties. In 1983-1984 the corresponding amounts budgeted were $27 million in Marin County and $8.7 million in the other four counties.

Upon assuming administration of the Buck trust, the foundation opened a second office in Marin County. Over 60 percent of the foundation's administrative expenses are now attributed to Marin County activities. The foundation states that before the advent of the Buck trust, it made annual grants in Marin County of $100,000 to $300,000 a year, and the county tells us that since 1972, the foundation has made a total of almost a million dollars in grants in Marin County from sources other than the Buck trust (i.e., an average of less than $100,000 annually).

■ In *Westinghouse* we held that the standard of "doing business" for purposes of section 394 turns on the extent to which the corporation is viewed as an outsider. ■ We said: "[Section 394] is based on the premise that there is a substantial risk of prejudice in favor of a local government entity. It is also apparently the judgment of the Legislature that any prejudice in favor of a governmental entity plaintiff will be so mitigated that a change of venue normally will not be needed when defendant corporation is 'doing business' in the county. It is apparent that 'doing business,' viewed in the perspective of guaranteeing a defendant a fair trial, relates to defendant's image in the community. ■ If defendant is viewed as an outside corporation, then diminution of the presumed prejudice is unlikely to occur.

If, on the other hand, defendant is viewed as closely associated with the community, there is less likelihood of the local bias that section 394 is designed to prevent. We therefore conclude that a corporation is doing business in a county for purposes of section 394 only if its activities in the county are substantial enough that the corporation can reasonably be viewed as being intimately identified with the affairs or closely associated with the people of the community." (17 Cal.3d at p. 271.)

 In a footnote to the last-quoted passage, we explained: "The question in each case is whether the corporation's activities are such that the corporation is reasonably likely to be viewed as an outsider, not whether it is actually so viewed. A change of venue because of actual prejudice is within the purview of section 397, subdivision 2, not section 394. The latter section 'is designed to obviate the appearance of prejudice as well as actual prejudice or bias.' (*City of Alameda* v. *Superior Court* (1974) 42 Cal.App.3d 312, 317 [116 Cal.Rptr. 806].)" (*Id.*, at p. 271, fn. 7.) Thus, under section 394, the possibility of local bias is deemed the same whether or not the case will be tried by a jury, whereas under section 397(2), the prospect of jury trial is extremely important, if not crucial, in determining whether "there is reason to believe that an impartial trial cannot be had" in the court where the matter is pending.

Finally, in *Westinghouse,* we concluded that under the enunciated standard, a corporation "with its main place of business in the county in which it is sued" or "with a major branch office in [that] county" cannot invoke section 394. (*Id.*, at p. 271.) Obviously, a mechanical application of that conclusion to this case would cause the foundation's branch office and related activities in Marin County to disqualify it for relief under section 394. The conclusion was based, however, on a balancing of competing considerations inherent in the most usual type of civil litigation between a county (or other local governmental agency) and a private party—a suit for damages. As the *Westinghouse* opinion explains: "A governmental entity . . . has a presumptive prejudicial advantage in an action it brings in its own county. That advantage is normally presumed mitigated, if not eliminated, when the defendant does business in the county. Thus, even though taxpayer jurors may be predisposed in favor of [the governmental entity] because of the potential effect on their taxes, they may overcome that understandable bias if they realize that unjustly favoring [the entity] will injure a local business and its contribution to the community economy." (*Id.*, at p. 272.)

Here, the relevant considerations are materially different. Marin County's primary objective is not recovery of damages but judicial action that would preclude the foundation from diverting any part of the Buck trust income, now distributed for charitable purposes wholly within Marin County, to

similar purposes in any outside county. A hypothetical trier of fact residing in Marin County would have a personal interest in achievement of that objective, perhaps as a taxpayer,[2] but in any event because the expenditure of Buck trust funds within the county improves the local quality of life, contributes to the local economy, and alleviates needs that might otherwise impose financial burdens on the local citizenry. Those local advantages are in no wise offset by any adverse effects stemming from the foundation's activities, or maintenance of a branch office, within the county. A complete county victory in the litigation will not "injure a local business and its contribution to the community economy" (*Westinghouse, supra,* 17 Cal.3d at p. 272).

Thus, the relevant inquiry is whether, in light not only of the status of the foundation but also of the nature of the litigation, the foundation is reasonably likely to be viewed as an outsider. As its very name, "The San Francisco Foundation," implies, the foundation's principal office, and the place where it was decided that the foundation would petition to modify the terms of the trust (the decision the county has brought these proceedings to counteract), is in San Francisco. The county's petition for removal of trustee is permeated with allegations of extreme hostility between the foundation and Marin County residents (referred to as "the beneficiaries" in keeping with the county's theory of the case). For example, it charges as follows: The foundation has "retained legal and philanthropic experts to confirm pre-determined objectives antagonistic to the interests of the beneficiaries . . . . These machinations were conducted in extreme secrecy, deliberately and wilfully to conceal them from the beneficiaries. . . . [O]fficers and employees of the San Francisco Foundation actively misrepresented facts to officials of the County of Marin and the public in order to conceal these covert activities. . . . The San Francisco Foundation has created extreme hostility between itself and the beneficiaries . . . . If the San Francisco Foundation is permitted to continue as a trustee, the beneficiaries of the Buck Trust will suffer irreparable loss and injury because the San Francisco Foundation has spurned Mrs. Buck's declared charitable intent in order to indulge its compulsion to embark upon vainglorious philanthropic adventures." ▮ Under these circumstances, we conclude that the foundation's activities (including its branch office) in Marin County do not bar it from relief under section 394, because the judgment sought by the county (1) is based on conduct of the foundation reasonably perceived to have been directed from its principal office outside the county, (2) would secure benefits for most or all Marin County residents and prevent their being required to share those benefits with residents of other counties, and (3) would have no adverse

---

[2]The county's petition for removal of trustee alleges that the county "is intensely interested in the . . . Buck Trust and has, and may, participate in the income of the Trust."

effect, or appearance of adverse effect, on the foundation's contribution to the county's economy.

V

The foundation therefore is entitled as a matter of law to relief under section 394. Because a transfer of proceedings to another county arguably would transgress Probate Code section 1123.7 (an issue on which we express no opinion), the appropriate form of such relief is the assignment of a disinterested judge from a neutral county to hear the matter. Accordingly, let a writ of mandate issue, ordering respondent court to request the Chairperson of the Judicial Council to appoint a disinterested judge from a neutral county to hear and determine the petition for modification of the terms of the trust, the petition for removal of trustee, and all other proceedings in connection therewith in the case now pending in respondent court entitled Estate of Beryl H. Buck, deceased, No. 23259. This order is final forthwith.

Bird, C. J., Mosk, J., Kaus, J., Broussard, J., Grodin, J., and Lucas, J., concurred.