**In re Everett Wesley & Barbara Joan RAU, Debtors.**

**John and Lennie BOATWRIGHT, Appellants,**

**v.**

**Everett Wesley & Barbara Joan RAU, Appellees.**

**BAP No. OR–89–1783–VRAs.**

**Bankruptcy No. 387–03177–P11.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Jan. 19, 1990.

Decided May 18, 1990.

Loren W. Collins, Salem, Or., for appellants.

Doug Combs, Salem, Or., for appellees.

Before VOLINN, RUSSELL and ASHLAND Bankruptcy Judges.

## OPINION

VOLINN, Bankruptcy Judge:

### OVERVIEW

The appellants appeal from an order denying their priority claim under § 507(a)(3) for unpaid wages that they assert were

earned within 90 days before the debtors ceased doing business. We AFFIRM.

## FACTS

The facts are not in dispute. As of April 1, 1983, the debtors operated two distinct businesses: a mining operation and a restaurant. The appellants, John and Lennie Boatwright, were employees in the debtors' mining business until approximately August 15, 1983. The debtors' mining business ceased within 90 days thereafter; however, their restaurant continued to operate at least until June 15, 1987, when they filed this bankruptcy case. The debtors owe each of the appellants at least $2,000 in unpaid wages earned within 90 days before the cessation of the mining business.

The appellants asserted that they were each entitled to a priority claim for $2,000 under § 507(a)(3),[1] which grants priority to claims for up to $2,000 in unpaid wages "earned within 90 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first...."

The debtors objected. The bankruptcy court focussed on the debtors' last business, the restaurant operation, which continued until more than 90 days after the wages were earned, and on that basis held that the wages were not "earned within 90 days before the cessation of the debtor's business" within the meaning of § 507(a)(3).

## ISSUE

The sole issue presented in this case is whether, in the case of a debtor operating more than one business, "the date of the cessation of the debtor's business" in § 507(a)(3) refers to the date of the cessation of the particular business operation in which the wage claimant was employed, or to the date on which all of the debtor's business activities ceased.

**1.** Section references refer to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, unless otherwise

## STANDARD OF REVIEW

The issue on appeal is one of statutory interpretation, which we review *de novo*. *In re Nunn*, 788 F.2d 617, 618 (9th Cir. 1986); *In re Klein*, 57 B.R. 818, 819 (9th Cir. BAP 1985).

## DISCUSSION

Section 507(a)(3) grants priority to allowed unsecured claims for wages ...

(A) earned by an individual within 90 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only

(B) to the extent of $2,000 for each such individual.

In the case of a debtor operating more than one business, the statutory language is ambiguous as to whether "the debtor's business" refers to the particular business operation for which the wage claimant worked, or to all of the debtor's business activities in aggregate.

### A. Case Law

The only reported decision on this issue of which we are aware is *Davidson Transfer & Storage Co. v. Teamsters Pension Trust Fund*, 817 F.2d 1121 (4th Cir.1987). While this case might appear apposite, it does not fully resolve the issue presented by the facts before us. In that case the debtor, Davidson Transfer & Storage Company, had more than 800 employees, four operating subdivisions, and four wholly-owned subsidiaries. *Id.* at 1122. After experiencing financial distress, the debtor closed its General Freight Division, discharging approximately 600 employees. *Id.* The debtor attempted to financially reorganize its reduced operation, but failed, filing bankruptcy approximately one year later. *Id.* A number of wage claimants argued that they were entitled to priority claims under § 507(a)(3) for wages earned within 90 days before the General Freight Division ceased doing business.

specified.

According to the 4th Circuit, the language of § 507(a)(3) is "unambiguous," and the resolution of the case before it "requires nothing more than a sound exercise in statutory interpretation." *Id.* at 1123. The court noted that "the debtor's business, although much reduced, has never ceased." *Id.* Thus the court implicitly found that both the General Freight Division, and the remainder of the debtor's business operations, were part of "the debtor's business," and therefore that "the cessation of the debtor's business" did not occur when the General Freight Division closed but the remainder of the debtor's activities continued.

The facts of the *Davidson* case are not congruent with those before us because there, the court implicitly found that the inoperative division was an integral part of the debtor's business operation. Here, the debtors' mining operation was entirely separate from their restaurant, except for the fact of their common ownership. Thus the *Davidson* case does not directly bear on the question of whether "the debtor's business" could apply exclusively to one of several separate and distinct business operations owned or operated by a single debtor.

### B.  *Legislative History and Policy Considerations*

■ Section 507(a)(3) was derived from § 64(a)(2) of the Bankruptcy Act,[2] which granted priority only for wages earned within 90 days before the commencement of the bankruptcy. The legislation "was intended for the benefit only of those who are dependent upon their wages, and who, having lost their employment by the bankruptcy, would be in need of such protection." *Blessing v. Blanchard*, 223 F. 35, 37 (9th Cir.1915). It "was intended to favor those who could not be expected to know anything of the credit of their employer, but must accept a job as it

comes...." *In re Lawsam Electric Co., Inc.*, 300 F. 736, 736 (S.D.N.Y.1924) (Learned Hand, J.). The statute was intended to give the employee some protection against the financial instability of an unknown employer; it did not attempt to protect employees against the possibility that their employer might abandon one business enterprise in favor of another without resorting to bankruptcy, even if the employer's subsequent business operations eventually led to bankruptcy.

The legislative history from the time of the passage of the current § 507(a)(3) states that

> The three month limit of [the Bankruptcy Act] is retained, but is modified to run from the earlier of the date of the filing of the petition or the date of the cessation of the debtor's business.

S.Rep. No. 989, 95th Cong., 2nd Sess. 68–72 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5855. Under the Act, the wage priority was simply related to the date of the employer's bankruptcy. Section 507(a)(3) appears to have been intended to preserve the same rule functionally, with an adjustment in the date to account for a possible delay between the debtor's business failure and the commencement of a bankruptcy case.[3] Under the Act, all of the debtor's former employees were subject to a single priority period which depended on when the debtor in its entirety commenced a bankruptcy. There is nothing to suggest that § 507(a)(3) was intended to alter the fundamental concept of the former rule by creating a separate priority period for each distinct business enterprise in which the debtor engaged at any time before the bankruptcy.

This interpretation is consistent with the approach of the Bankruptcy Code as a whole. Nowhere in the Code is there a distinction between different business operations of the debtor. Throughout the

---

**2.** Former § 64(a)(2), codified as 11 U.S.C. § 104(a)(2), provided a priority claim for:

(2) Wages and commissions, not to exceed $600 to each claimant, which have been earned within three months before the date of the commencement of the proceeding....

**3.** It is conceivable that a debtor, in an effort to orient priorities more favorably to his personal circumstances, would intentionally delay filing, e.g., in an effort to avoid or minimize potential liability for withholding taxes.

Code, the essential entity is the debtor, including the aggregate of all of the debtor's assets, debts, and business operations.[4] The language of § 507(a)(3) could have departed from this general approach by explicitly linking the 90–day period to the cessation of the particular business operation in which the wage claimant was employed, but it does not do so, instead measuring that period from "the date of the cessation of the debtor's business." In view of the general approach of the Code it is most reasonable to infer that this language refers to all of the debtor's business operations in aggregate.

Interpreting § 507(a)(3) to refer separately to each business operation owned or operated by the debtor would lead to an unworkable rule. Courts would be called upon in each case to determine whether the work performed by each wage claimant was for a separate and distinct business operation of the debtor that ceased within 90 days after that claimant's last day of work. In many bankruptcy cases this analysis could require an examination of years of evolving business activities by the debtor, with its lineage of employees, and the conceptual classification of those business activities into separately defined business operations. This interpretation of § 507(a)(3) could result in an employee who had worked for the debtor's last business effort, say 92 days before bankruptcy, receiving nothing out of the assets from a business he worked for, while an employee of years before receives a priority payment from those same assets which may not even have been in existence at the time his wages accrued. The courts should interpret statutes so as to avoid absurd results. *See e.g., Gov't of Virgin Island v. Berry,* 604 F.2d 221, 225 (3d Cir.1979); *Consumers Union of United States, Inc. v. Saw-*

hill, 512 F.2d 1112, 1118 (Temp.Emer.Ct. App.1975). We see no evidence in § 507(a)(3), the Bankruptcy Code, or the legislative history to suggest that the latter interpretation corresponds with Congress' intent.

From a policy standpoint, it is reasonable that wage earners who contributed their efforts to the debtor's business immediately before its demise, presumably thereby enhancing its value, should be entitled to a priority claim to the value that they helped create. This policy consideration would not apply, however, in the case of a wage earner employed by the debtor in a previous business venture terminated several years before the bankruptcy.

■ We recognize that there could be close cases where a failing business winds down gradually, evolving into a liquidation effort and ultimately a bankruptcy, and as a result "the date of the cessation of the debtor's business" is difficult to determine. Specifically, it is conceivable that that date could be fixed at some time prior to the bankruptcy even if some minimal business operations (for example, preparation for bankruptcy or commencing liquidation efforts) continue until or beyond the date of bankruptcy. The case before us is not such a case, however. Here the debtor continued actively in the restaurant business for several years after the termination of the mining operation and the appellants' employment, disqualifying the appellants' wage claims from § 507(a)(3) priority.

### CONCLUSION

We hold that for the purposes of § 507(a)(3), if a debtor operated more than one business, "the debtor's business" refers to all of the debtor's various business operations in aggregate. In this case,

---

**4.** For example, § 541 provides that the bankruptcy estate includes "all legal or equitable interests *of the debtor* in property," "wherever located and by whomever held." The extent of the estate is therefore determined solely by the extent of the debtor as a legal entity, and not by the extent of the business operation or operations which the debtor owned or operated.

Similarly, creditors' claims are asserted against the estate as a whole. Even if the debt-

or operates more than one business operation with separate groups of creditors, all of the debtor's assets become part of one estate, and the creditors' claims are paid pro rata out of that estate, regardless of whether the debtor's various business operations would have had different degrees of solvency or insolvency if considered separately.

therefore, the appellants' wage claims are for wages earned more than 90 days before "the date of the cessation of the debtor's business," and thus are not entitled to priority under § 507(a)(3). The order of the bankruptcy court is therefore AFFIRMED.