**In re Virginia H. JONES, Debtor.**

**Virginia H. JONES, Appellant,**

**v.**

**Leon HESKETT and Kelleher Lumber Company, Inc., Appellees.**

BAP No. NC–93–2184–MePeG.

Bankruptcy No. 4–90–05815 NP–1.

Adv. No. 93–4230 AT.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted May 19, 1994.

Decided April 21, 1995.

Lynn Anderson Koller, Emeryville, CA, for Virginia H. Jones.

Patrick M. Macias, San Rafael, CA, for Kelleher Lumber Co.

Before MEYERS, PERRIS and GREENWALD[1], Bankruptcy Judges.

## AMENDED OPINION

MEYERS, Bankruptcy Judge:

### I

The bankruptcy court held that in determining whether a judgment lien attached to a debtor's property under California law, the equity in the property should be determined as of the date the debtor filed her bankruptcy petition. The debtor appealed, contending that the equity should have been determined

on the date the abstract of judgment was recorded.

We **AFFIRM**.

### II

### FACTS

The facts in this matter are undisputed. Virginia Jones ("Debtor") and her husband Brian Jones ("Jones") acquired a residence in Berkeley, California in 1976. The residence was encumbered by a purchase money first deed of trust in favor of California Federal Savings & Loan Association, recorded in December 1976. Deeds of trust subsequently were recorded in favor of Crocker National Bank, C. Markus Hardware, Inc. and Haley Bros., Inc. ("Haley"). In November 1986, the Debtor and Jones recorded a declaration of homestead for the residence.

Kelleher Lumber Company, Inc. ("Kelleher") filed an action in state court against Jones. After obtaining a $29,882.50 judgment against Jones, in June 1987 Kelleher recorded an abstract of judgment against the residence.

Haley filed an action on the debt secured by its deed of trust. After obtaining judgment against Jones, Haley recorded an abstract of judgment on April 11, 1988.

The Debtor filed a Chapter 7 bankruptcy petition on November 26, 1990. The case subsequently was converted to one under Chapter 13 of the Bankruptcy Code.

On April 19, 1993, the Debtor filed a complaint to determine the validity and extent of the judgment liens in favor of Kelleher and Haley. The complaint alleges that the liens did not attach to the Debtor's residence. The matter was tried in the bankruptcy court on August 24, 1993.

The court filed a Memorandum of Decision, finding the Kelleher lien valid and the Haley lien invalid. Judgment was entered on October 12, 1993. The Debtor appeals from that portion of the judgment upholding the validity of the Kelleher lien.

1. Hon. Arthur M. Greenwald, from the Central District of California, and Hon. Elizabeth L. Perris, from the District of Oregon, both sitting by designation.

## III

### STANDARD OF REVIEW

Because the facts in this appeal are undisputed, this appeal involves only legal issues which are subject to *de novo* review. *In re Conco Bldg. Supplies, Inc.*, 102 B.R. 190, 191 (9th Cir. BAP 1989).

## IV

### DISCUSSION

The Debtor argues that the Kelleher lien is invalid because it never attached to the Debtor's residence. The bankruptcy court looked to the case of *In re Chabot*, 992 F.2d 891 (9th Cir.1993), in finding the Kelleher lien valid. The issue before the *Chabot* court was whether a lien should be avoided pursuant to 11 U.S.C. § 522(f) as impairing the debtors' exemption. 992 F.2d at 893. The court reasoned that before deciding whether a lien should be avoided as impairing an exemption, it first must be determined that there is a valid, attached lien. *Id.* Consequently, the court first determined whether, under California law, the lien attached to the debtors' residence. *Id.*

The court stated that under subsection (c) of Cal.Civ.Proc.Code ("CCCP") Sec. 704.950, a judicial lien may attach to any equity remaining in the property after subtracting all prior liens and the declared homestead exemption. 992 F.2d at 894. The *Chabot* court applied Section 704.950 to determine whether there was any equity at the time the Chapter 7 petition was filed. 992 F.2d at 893–94. The court found that at that time, after subtracting from the value of the residence (1) the money owed on the promissory notes secured by the deeds of trust and (2) the amount of the homestead exemption, there was enough "surplus equity" for the disputed lien to attach. 992 F.2d at 894.

Following *Chabot*, the bankruptcy court decided whether there was equity to which the Kelleher and Haley judgment liens could attach on the petition date. The court determined that on the date the bankruptcy petition was filed, the value of the residence was $325,000 and the senior consensual liens totalled $248,000. After subtracting the total liens and the $45,000 homestead exemption from the value of the residence, the court stated that there was $32,000 in equity to which junior liens could attach ($325,000 − $248,000 − $45,000 = $32,000). Following *Chabot*, the court held that the Kelleher lien could not be avoided because it attached to equity in the residence above the senior liens and the homestead exemption on the date the bankruptcy petition was filed.[2] Because the Kelleher judgment lien exceeded $32,000, it exhausted the balance of the surplus equity. As a result, the Haley lien did not attach to any equity and could be avoided.

The Debtor argues that *Chabot* does not apply because the instant case was a proceeding to determine the extent and validity of liens under Fed.R.Bankr.P. 7001, while *Chabot* concerned a motion to avoid liens under 11 U.S.C. § 522. The Debtor has not explained why this difference is material. The court in *Chabot* specifically stated that before it decided whether a judgment lien was avoidable, it first would determine its validity. Similarly, in the instant case, the Debtor asked the court to determine the validity of judgment liens. *Chabot* is not distinguishable.

The Debtor contends that the court in *Chabot* misconstrued CCCP Sec. 704.950. This statute provides in relevant part:

> (a) Except as provided in subdivisions (b) and (c), a judgment lien on real property ... does not attach to a declared homestead if both of the following requirements are satisfied:

---

2. The Bankruptcy Reform Act of 1994 amended 11 U.S.C. § 522(f)(2) to overrule the holding in *Chabot* that a judgment lien will be avoided only to the extent it is secured by the debtor's property on the bankruptcy petition date. Under Section 303 of the Bankruptcy Reform Act, the unsecured portion of the lien also will be avoided to the extent the value of the lien exceeds the amount of surplus equity. The revisions to Code Section 522 do not apply to the instant case, since generally the Bankruptcy Reform Act is applicable only in bankruptcy cases filed on or after October 22, 1994. Bankruptcy Reform Act of 1994, Pub.L. No. 103–393, 108 Stat. 4106, Sec. 702.

(1) A homestead declaration describing the declared homestead was recorded prior to the time the abstract or certified copy of the judgment was recorded to create the judgment lien.

(2) The homestead declaration names the judgment debtor or the spouse of the judgment debtor as a declared homestead owner.

. . . . .

(c) A judgment lien attaches to a declared homestead in the amount of any surplus over the total of the following:

(1) All liens and encumbrances on the declared homestead *at the time the abstract of judgment or certified copy of the judgment is recorded* to create the judgment lien.

(2) The homestead exemption set forth in Section 704.730. CCCP § 704.950 (West 1987) (emphasis added).

In sum, Section 704.950 provides that a judgment lien will not attach if a declared homestead already has been recorded. An exception to this rule is that a judgment lien attaches to a declared homestead in the amount of any surplus over the total of the homestead exemption and the liens and encumbrances existing when the judgment is recorded.

Applying the Debtor's interpretation of CCCP § 704.950 to this case, the Kelleher lien ordinarily would not attach to the Debtor's homestead because it was created after the declared homestead was recorded. The lien would not attach under the exception in subsection (c) either, because there was no surplus equity to which it could attach. The value of the residence was $325,000 on the petition date, the homestead exemption was $45,000 and in June 1987, when the Kelleher judgment was recorded, the total amount owed on the trust deeds was $313,800. Thus, if the judgment's recordation date is the only relevant date in determining the senior consensual liens on the homestead, thereby fixing the amount owed on the senior trust deeds at $313,800, the Kelleher lien would not have attached because there was no surplus equity in the property.

A surface reading of Section 704.950 seems to support the Debtor's argument. However, the court in *Chabot* did not construe Section 704.950 in the manner urged by the Debtor. Even if we disagreed with the Ninth Circuit Court of Appeals' analysis in *Chabot* we are bound by it. The *Chabot* court did not explain why it construed Section 704.950 as it did. We find guidance in the reasoning of several bankruptcy court cases and a journal article, along with principles of statutory interpretation, and conclude that the *Chabot* decision is on firm ground. We hold that although a lack of surplus equity might prevent a judicial lien from attaching to property on the date the judgment is recorded, the lien will attach to the property in the event surplus equity is created.

■ Statutes should not be mechanically construed, but must be interpreted in light of their purposes. *San Francisco Foundation v. Superior Court*, 37 Cal.3d 285, 297, 208 Cal.Rptr. 31, 690 P.2d 1 (1984); *Westinghouse Electric Corp. v. Superior Court*, 17 Cal.3d 259, 268, 131 Cal.Rptr. 231, 551 P.2d 847 (1976). The Panel believes that the language in CCCP Sec. 704.950(c) refers to and assures the priority of senior encumbrances over a later-recorded judgment lien, and the priority of a recorded homestead over liens and encumbrances created after the creation of the homestead. The court in *In re Dodge*, 138 B.R. 602 (E.Cal.1992), seemed to interpret Section 704.950 in this way. It stated that "[u]nder § 704.950, the judgment lien does not *attach until* the equity in the property exceeds all liens, encumbrances and the homestead amount." 138 B.R. at 606 n. 6 (second emphasis added).

■ A California statute should be construed with reference to the entire statutory system of which it forms a part, in such a way that harmony may be achieved among the parts. *See In re Talmadge*, 832 F.2d 1120, 1123–24 (9th Cir.1987); *People v. Caudillo*, 21 Cal.3d 562, 585, 146 Cal.Rptr. 859, 580 P.2d 274 (1978). Accordingly, CCCP Sec. 704.950 should be construed in light of the California statutes concerning judgment liens.

Cal.Civ.Code Sec. 2897 assures the priority of liens according to the date the underlying judgments are recorded. It provides: "Other things being equal, different liens upon the same property have priority according to the time of their creation, except in cases of bottomry and respondentia." Interpreting CCCP Section 704.950 in the manner urged by the Debtor would introduce a conflict with Section 2897, in that a lien could have priority over an earlier created lien upon the same property if an encumbrance senior to both liens is paid off by the time the most junior lien is created. In Comment, *Exemptions under the Bankruptcy Code: Using California's New Homestead Law as a Medium for Analysis,* 72 Calif.L.Rev. 922 (1984), the author recognized this type of problem. The article states:

> The declared homestead, however, does appear to create an unfortunate anomaly. Suppose that a debtor's home has a market value of $145,000; the debtor files a homestead declaration and is entitled to a $45,000 exemption. On March 1, a creditor files a $100,000 judgment lien. On March 2, a second creditor records a $10,000 lien. Since the second lien overencumbers the property, § 704.950 provides that the lien does not attach to the homestead. Suppose that two years later the market value of the home has risen to $155,000. A third creditor then files a $10,000 lien. Since there is an equity at the time the third creditor files the lien, the lien attaches to

the property. This creates an absurd result; the second judgment creditor receives no satisfaction. This contradicts the fundamental principle that an earlier lienor has absolute priority over a later lienor.... A lien, by definition, gives priority to those who are first in time.

72 Calif.L.Rev. at 940, n. 117.[3]

Accordingly, if the bankruptcy court in this case had determined that the Kelleher lien had not attached, then the Haley lien, which was created after Kelleher's lien, could have been given priority over the Kelleher lien.[4]

The Dissent points out that a creditor whose lien did not attach at the time the judgment was recorded is not without recourse. The creditor may rerecord the judgment once there is equity in the property. Under CCCP § 697.020(b), when a creditor creates more than one lien on the same property under the same judgment, the creditor's priority relates back to the date the first lien was created.[5] This section allows, for example, relation back of an execution lien to the date a prior unsuccessful execution lien was created or to the date a judgment lien on the same debt was created. We do not believe that in enacting Section 697.020(b), the California legislature envisioned creditors having to constantly rerecord their abstracts of judgment in speculation that there may be equity in the debtor's property.

---

**3.** The Comment assumes that under CCCP Sec. 704.950(c)(1), for the purpose of determining whether a lien attaches, the value of property is measured only at the time the judgment is recorded. We disagree. The phrase in Section 704.950(c)(1), "at the time the abstract of judgment ... is recorded," modifies only the words "[a]ll liens and encumbrances." The "amount of any surplus" is not modified by the phrase "at the time the abstract of judgment ... is recorded." The statute nowhere indicates that the value of the property is calculated only at the time the abstract is recorded.

The Comment also provides that unless the legislature were to amend Section 704.950 to provide that any surplus equity at the time of sale would inure to those lienors who were first in time, "the bankruptcy courts are bound by this law." *Id.* Because courts should interpret statutes so as to avoid absurd results, *In re Rau,* 113 B.R. 619, 622 (9th Cir. BAP 1990), we do not feel bound to read Section 704.950 to reach a result

which the author finds "absurd." Comment, *supra,* 72 Calif.L.Rev. at 940, n. 117.

**4.** In fact, the bankruptcy court determined that because Kelleher's lien had attached and exhausted the surplus equity in the residence, the Haley lien could be avoided. The portion of the order avoiding Haley's lien has not been appealed. Consequently, were the Panel to rule that Kelleher's lien was invalid, the creditors who had properly recorded judgments on the Debtor's property would not benefit from the $32,000 in surplus equity in the property.

**5.** CCCP § 697.020(b) provides: "If a lien is created on property pursuant to this division and a later lien of the same or a different type is created pursuant to this division on the same property under the same judgment while the earlier lien is in effect, the priority of the later lien relates back to the date the earlier lien was created."

The purpose of recording is to give notice of existing claims to prospective purchasers and mortgagees. *Taormina Theosophical Community, Inc. v. Silver*, 140 Cal.App.3d 964, 971, 190 Cal.Rptr. 38 (1983); *Lawyers Title Co. v. Bradbury*, 127 Cal.App.3d 41, 46, 179 Cal.Rptr. 363 (1981). Under California law, recording, by itself, grants no interest in the property. 140 Cal.App.3d at 971. By construing the statutes as Kelleher urges, we would be giving much greater significance to the act of recordation than what it was designed for—to provide notice. Moreover, requiring repeated recordation of a judgment in order to ensure priority would unduly increase the cost of pursuing judgments and possibly create confusion in the process of reviewing title to property.

Another reason for using the date of bankruptcy to determine the amount of liens on the Debtor's property is that the date of filing already is used to measure exemptions and to determine which property may be claimed as exempt. *In re Dvoroznak*, 38 B.R. 178, 182 (E.N.Y.1984). It would be impractical to demand evidence of all senior liens on the date the abstract of judgment is recorded as well as on the bankruptcy petition date.

## V

## CONCLUSION

■ On first reading of CCCP Sec. 704.950(c), it appears that the amount of senior encumbrances on property protected by a declaration of homestead is measured as of the date an abstract of judgment is recorded, and for the purposes of determining when the judgment lien attaches, the amount stays constant even if some of the senior liens are paid off. However, in light of *In re Chabot* and the directive in Cal.Civ.Code Sec. 2897 to prioritize judgment liens by the dates the judgments are recorded, and in order to avoid the absurd result of having creditors repeatedly rerecord the same abstract of judgment, Section 704.950(c) should be interpreted as concerning only the priority of liens. A decrease in the amount of senior liens encumbering a property should affect the determination of whether junior liens attach to that property. In considering the

validity and extent of judgment liens on the Debtor's property, the bankruptcy court correctly considered the amount of liens on property as of the bankruptcy filing date.

## We **AFFIRM**.

GREENWALD, Bankruptcy Judge, dissenting:

I respectfully dissent from the majority opinion and would **REVERSE** the bankruptcy court's decision.

In rendering its decision, the bankruptcy court determined that on the petition date, there existed surplus equity in the Residence to which the Kelleher judgment lien attached. Therefore, the bankruptcy court applied 11 U.S.C. § 522(f) in reliance on the Ninth Circuit's decision in *In re Chabot*, 992 F.2d 891 (9th Cir.1993) and found that this judgment lien could not be avoided.

In *Chabot*, the Ninth Circuit found that City National Bank's judgment lien did not impair the debtor's claimed homestead exemption. Therefore, it could not be avoided under § 522(f). In reaching its decision, the Ninth Circuit determined that the application of § 522(f) required a two-step analysis. Initially, a bankruptcy court must determine whether, under state law, the judgment lien in question attached to the property. *Chabot*, 992 F.2d at 893–94. If there exists a valid lien under state law, it then must be determined whether, under federal bankruptcy law, the lien impairs the exemption and therefore must be avoided under § 522(f). *Id.* at 894.

In addressing the first question, the Ninth Circuit made reference to California law, in particular, California Code of Civil Procedure, Section 704.950(c), stating as follows:

C. *Did CNB's Lien Attach to the Chabots' Residence under California Law?*

■ The Chabots claim CNB's lien never attached to their residence and was discharged as a personal liability. Pursuant to California Code of Civil Procedure section 704.950, a judgment lien will generally not attach to a declared homestead recorded prior to the recordation of the abstract of judgment. Subsection (c) of section 704.950, however, provides that,

A judgment lien attaches to a declared homestead in the amount of any surplus over the total of the following:

(1) All liens and encumbrances on the declared homestead at the time the abstract of judgment or certified copy of the judgment is recorded to create the judgment lien.

(2) The homestead exemption set forth in Section 704.730.

*Id.* at 893. The Ninth Circuit then determined that there existed surplus equity, applying the liens and the encumbrances, the exemption, as well as the Residence's value, as of the petition date. Aside from describing these amounts, the Court, however, did not set forth any specific reasons regarding its application of C.C.P. § 704.950(c). It is unclear from the Opinion whether there also existed surplus equity on the date the abstract of judgment was recorded, as required by C.C.P. § 704.950(c).

I submit that the majority's holding requires bankruptcy courts to utilize the petition date when determining the extent and validity of liens pursuant to Rule 7001, Federal Rules of Bankruptcy Procedure ("Rule 7001"). In accordance with this interpretation, the majority affirmed the bankruptcy court's decision, finding that the Kelleher judgment lien attached to the Residence because surplus equity existed in the Residence on the petition date.

I disagree with this result as the *Chabot* court specifically applied state law when determining whether a lien attached to property. The *Chabot* case should not be applied to cases involving lien validity under Rule 7001, utilizing the petition date, where a different date is mandated under applicable state law. Therefore, for purposes of determining whether, in the instant case, the Kelleher judgment lien attached to the Residence, the majority should look exclusively to the appli-

cable state law, as mandated by *Chabot,* in this case C.C.P. § 704.950(c).

Under California law, an abstract of a money judgment that is enforceable in California may be recorded to create a judgment lien on real property. C.C.P. § 697.060(a). A judgment lien on real property is created by recording an abstract of a money judgment with the county recorder, except as otherwise provided by statute. C.C.P. § 697.310(a).

Once a judgment lien on real property is created pursuant to C.C.P. § 697.310, it attaches to all present and future interests in real property that are subject to enforcement of the money judgment against the judgment debtor in the county where the lien is created. C.C.P. § 697.340(b). This lien continues for 10 years from the date of the entry of the judgment. C.C.P. § 697.310(b).

A judgment lien created pursuant to C.C.P. § 697.310, et seq., generally does not attach to a declared homestead which meets the requirements of C.C.P. § 704.950(a) [1]. However, C.C.P. 704.950(c) does provide an exception to this general rule, stating as follows:

(c) A judgment lien attaches to a declared homestead in the amount of any surplus over the total of the following:

(1) All liens and encumbrances on the declared homestead at the time the abstract of judgment or certified copy of the judgment is recorded to create the judgment lien.

(2) The homestead exemption set forth in Section 704.730.

Under this section

[I]t finally became possible to create a judgment lien on homesteaded property. The lien is created by recording an abstract of judgment (citations omitted) and attaches to the value of the property in excess of the statutory homestead exemp-

---

**1.** § 704.950. **Judgment lien on real property; attachment to declared homestead**

(a) Except as provided in subdivisions (b) and (c), a judgment lien on real property created pursuant to Article 2 (commencing with Section 697.310) of Chapter 2 does not attach to a declared homestead if both of the following requirements are satisfied:

(1) A homestead declaration describing the declared homestead was recorded prior to the time the abstract or certified copy of the judgment was recorded to create the judgment lien.

(2) The homestead declaration names the judgment debtor or the spouse of the judgment debtor as a declared homestead owner.

tion and all liens and encumbrances in existence when the abstract of judgment is recorded (Code Civ.Proc., 704.950, subd. (c)).

*Stoffel v. Dutton*, 175 Cal.App.3d 1185, 1187, 221 Cal.Rptr. 346, 348 (1985).

A plain reading of C.C.P. § 704.950(c) requires that surplus equity be determined on the date the abstract of judgment is recorded. As this court pointed out in the case of *In re Shaw*, 157 B.R. 151 (9th Cir. BAP 1993):

> The starting point in every case involving construction of a statute is the language itself. "In determining the meaning of any statute, the words of the statute are 'the primary, and ordinarily the most reliable, source of interpreting' its meaning." Thus, when the language of the statutes is plain, "the sole function of the courts is to enforce it according to its terms."

*Id.* at 153 (citations omitted).

Though the statute is silent regarding the value of the declared homestead, implicit in the formula for determining surplus equity is the value of the declared homestead on the recordation date. This interpretation is necessary and consistent with the statute's clear requirement that all liens and encumbrances are required to be determined on the recordation date. In addition, it is in accordance with the definition of equity, i.e., "[t]he money value of a property beyond any mortgage or liabilities existing on it". *Webster's II New Riverside University Dictionary* 440 (1988).

In the instant case, the Debtor recorded a declaration of homestead in November of 1986. When Kelleher recorded an abstract of its $29,882,50 judgment in June of 1987, the encumbrances on the property totalled $313,800. The amount of the declared homestead exemption was $45,000. As the Residence's value was only worth $250,000 at the time, the Kelleher judgment lien did not attach to the Debtor's Residence because there did not exist any surplus equity in the property, i.e., the sum total of the encumbrances and liens and the homestead exemp-

tion was $358,800, exceeding the Residence's value of $250,000 by $108,800.

Despite the fact that Kelleher's judgment lien did not attach to the Debtor's homesteaded property as of the recordation date, under California law, the unattached lien still remained of record and could attach to other real property in which the Debtor had an interest. Schwartz & Ahart, *California Practice Guide: Enforcing Judgments & Debts* § 6:1058 (TRG 1991). "A lack of equity in the property simply means that the lien has little or no value. It does not, however, render the lien unenforceable." *In re Morgan*, 157 B.R. 467, 470 (Bankr.C.D.Cal.1993).

Subsequent events affecting one or more of the surplus equity elements, such as increases in value and/or decreases in the number or balances of the encumbrances, may create surplus equity necessitating the rerecording of an abstract of judgment. This creates a new lien on the homesteaded property, the prior lien being unenforceable against the homesteaded property due to lack of surplus equity on the date the abstract was recorded. In the instant case, the undisputed facts are that on the petition date, the Kelleher judgment lien did attach to the Residence, as there was surplus equity in the amount of $32,000, though this was not the case on the date the abstract of judgment was recorded. The Residence increased in value from $250,000 on the recordation date to $325,000 on the petition date, with the liens and encumbrances decreasing from $313,800 to $248,000, the exemption of $45,000 remaining unchanged. Though the record is not precise as to when in point of time these changes occurred, they did take place subsequent to the recordation date. However, Kelleher did not take advantage of the increase in value and/or decrease in the amounts of the liens and encumbrances by rerecording the abstract of judgment. Were the new abstract recorded, a new judgment lien would have been created and attached to the Residence. Further, the new judgment lien's priority under state law would relate back to the date the original abstract of judgment was recorded pursuant to C.C.P.

§ 697.020,[2] thus preserving the priority created by the recordation of the earlier abstract of judgment.

The majority contends that this Panel should ignore the plain reading of C.C.P. § 704.950 because (i) it conflicts with California statutory system governing the priorities of liens; (ii) it is convenient to use the petition date to determine the validity of liens on the Debtor's property because, under the Bankruptcy Code, the petition date is used to measure exemptions and to determine which property may be claimed as exempt; (iii) it would be impractical to demand evidence of all senior liens on the date the abstract was recorded, as well as on the petition date; and (iv) the Debtor's position would generate a constant rerecording of the abstract based upon creditors' speculation as to surplus equity which would unduly increase the cost of collection, as well as create confusion in reviewing title to property.

Following the plain language of C.C.P. § 704.950 does not conflict with California's lien priority system. First, as previously illustrated, the priority of a rerecorded judgment lien is preserved by the relation-back provisions contained in C.C.P. § 697.020(b). Therefore, there is no conflict with C.C.C. § 2897[3]. Second, I am not persuaded that California's statutory scheme discourages judgment creditors from rerecording an abstract of judgment. C.C.P. § 697.020(b) indicates that the legislators actually contemplated that a creditor would rerecord the same judgment to create a new judgment lien on the same real property.

Additionally, I am not persuaded that it is more convenient for bankruptcy courts to determine whether a lien has attached to exempt property when considering exemptions and determining which property may be claimed as exempt. I recognize that in applying § 522(f), and the required analysis mandated by the *Chabot* case, a bankruptcy court will have to consider the value of the declared homestead, all liens and encumbrances and the amount of the homestead exemption for two periods of time (1) the date the abstract is recorded for purposes of lien attachment or validity under state law and (2) the date the petition was filed for purposes of lien avoidance under federal law. I believe however, that it is not impractical to demand evidence of all senior liens on the date the abstract was recorded, as well as on the petition date because these are evidentiary matters, which can be addressed by a bankruptcy court in the same manner as other factual considerations.

The majority suggests that had the bankruptcy court determined that the Kelleher lien had not attached, then the Haley lien, recorded after the Kelleher lien, could have been given priority over the Kelleher lien.

A review of the record in this case indicates to the contrary. In approximately April of 1988, the holder of the Haley deed of trust sued the Debtor on the underlying obligation, obtaining a judgment in the amount of $66,900 and recording an abstract of judgment. At that time, the residence had a value of $275,000. As of June of 1987, when Kelleher recorded its abstract of judgment, the value of the Residence was $250,000. Senior encumbrances totalled $313,800. There is no evidence in the record to indicate that these encumbrances declined measurably between June of 1987 and April of 1988. Nor did the amount of the declared homestead change. As the value of the Residence

---

**2. § 697.020. Priorities; third party rights**

(a) If a lien is created on property pursuant to Title 6.5 (commencing with Section 481.010) (attachment) and after judgment in the action a lien is created pursuant to this division on the same property under the same claim while the earlier lien is in effect, the priority of the later lien relates back to the date the earlier lien was created.

(b) If a lien is created on property pursuant to this division and a later lien of the same or a different type is created pursuant to this division on the same property under the same judgment while the earlier lien is in effect, the priority of the later lien relates back to the date the earlier lien was created.

(c) Nothing in this section affects priorities or rights of third persons established while the earlier lien was in effect under the law governing the earlier lien.

**3. § 2897. Time of creation; exception**

PRIORITY OF LIENS. Other things being equal, different liens upon the same property have priority according to the time of their creation, except in cases of bottomry and respondentia.

increased by only $25,000 as of April of 1988, there was no surplus equity for the Haley lien to attach to when the abstract was recorded, the encumbrances, liens and homestead exemption exceeding the Residence's value by $83,800. Therefore, as the Haley lien did not attach to the Residence, it acquired no priority over the Kelleher lien. Creditors who properly recorded their lien would still benefit from any surplus equity generated thereafter. Haley's failure to appeal the bankruptcy court's order is of no consequence.

In addition, I take exception to the majority's conclusions that the Debtor's position would result in a constant rerecording of the abstract based upon a creditor's speculation as to the existence of surplus equity in the debtor's property, or that the rerecording of an abstract would unduly increase the costs of pursuing judgments and create confusion in reviewing title to property.

Secured lenders who have voluntary liens on a debtor's property periodically evaluate the worth of their collateral and the burdens that may encumber this collateral because of changing market conditions and/or the debtor's business practices. It is neither absurd nor unreasonable to expect that a judgment creditor, in order to protect his claim, would make similar evaluations and, if necessary, rerecord an abstract in order to increase the likelihood of collecting the judgment. This evaluation process is neither speculative, nor an undue burden, but in reality, a prudent practice by a creditor who desires to advance the collection of his judgment.

Nor is there any support for the conclusion that this process would unduly increase collection costs. In all likelihood, the creditor has already incurred substantial costs in securing the judgment. The rerecording process is a foreseeable extension of a creditor's collection efforts, increasing the probability of collection. Any costs related to this process would not be unduly burdensome or excessive when considering alternative methods of attempting to collect a judgment which would otherwise remain unsecured.

Further, the evaluation process is not one requiring constant rerecording. It is unlikely that a creditor will attempt to rerecord

when he has determined that there is no surplus equity. Once the creditor determines the existence of surplus equity and records the abstract, the creditor's lien will attach to the property with no further recording required.

Finally, the majority gives no explanation as to how a rerecording of the abstract would create confusion in the change of title, particularly where, in California, there exists title insurance.

### CONCLUSION

The instant case involves a determination under California law as to the validity of the Kelleher judgment lien. A plain reading of C.C.P. § 704.950(c) requires that surplus equity be determined as of the date the abstract of judgment is recorded and not the petition date, as determined by the bankruptcy court. The undisputed facts establish that there was no surplus equity on the date the abstract of judgment was recorded. As the judgment lien did not attach to the Residence, the Kelleher judgment lien is invalid. Accordingly, I would **REVERSE** the bankruptcy court's judgment with respect to the Kelleher judgment lien.