[No. A090433. First Dist., Div. Five. May 16, 2000.]

KENNEDY/JENKS CONSULTANTS, INC., Petitioner, v.
THE SUPERIOR COURT OF CONTRA COSTA COUNTY, Respondent;
CITY OF RICHMOND et al., Real Parties in Interest.

**COUNSEL**

Construction Law Group and Lee J. Norvich for Petitioner.

No appearance for Respondent.

Gibbons & Conley, Austin R. Gibbons and Mark C. LeClerc for Real Party in Interest City of Richmond.

Law Offices of Matthew J. Webb and Matthew J. Webb for Real Parties in Interest Anita Camell et al.

**OPINION**

**KRAMER, J.\***—In this writ proceeding, we consider (A) whether a cross-defendant is entitled to transfer a civil action to a neutral county pursuant to

*Judge of the San Francisco Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Code of Civil Procedure[1] section 394, subdivision (a); (B) if so, whether the cross-defendant's business presence in the forum county disqualifies it from transferring the case; and (C) assuming that the cross-complaint must be transferred to a neutral county, whether the underlying complaint should also be transferred.

The underlying complaint, brought in Contra Costa County by 43 residents of the City of Richmond (Richmond), seeks to recoup damages from Richmond for losses the residents allegedly suffered when their neighborhood was flooded during the winters of 1995, 1997, and 1998. The residents allege that Richmond's faulty storm drainage and flood control systems caused the flooding.

After the underlying action had been pending for almost two years, Richmond filed a cross-complaint against petitioner Kennedy/Jenks Consultants, Inc. (KJC), alleging causes of action for indemnification, apportionment of fault, and declaratory relief. The cross-claims arise from a 1995 contract under which KJC provided consulting services regarding Richmond's storm drainage systems.

In response to Richmond's cross-complaint, KJC brought a motion to transfer venue from Contra Costa County (where Richmond is located) to a neutral county (§ 394, subd. (a) (hereafter section 394(a))) and to sever the cross-complaint from the underlying complaint (§ 1048, subd. (b)). The trial court denied both motions. In rejecting KJC's transfer request, the trial court indicated its belief that section 394 does not apply to cross-complaints, but even if it did, KJC could not obtain a transfer because it was doing business in Contra Costa County.

KJC's timely filed petition for writ of mandate (§ 400) only challenges the denial of its motion to transfer.[2] The petition also seeks a stay of trial pending our resolution of this matter. We conclude that KJC is entitled to writ relief, and we have disposed of the request for a stay by separate order.

---

[1] All undesignated section references are to the Code of Civil Procedure.

[2] KJC's petition designates Richmond as the sole real party in interest. (See §§ 1088, 1107; Cal. Rules of Court, rule 56(a).) A writ petition must name all real parties in interest, defined as any person or entity whose interest will be directly affected by the proceeding. (*Sonoma County Nuclear Free Zone '86 v. Superior Court* (1987) 189 Cal.App.3d 167, 173 [234 Cal.Rptr. 357].) This division has recognized that before writ relief may be granted, all real parties in interest must be given notice of the writ proceeding and an opportunity to be heard. (*Id.* at pp. 173, 175-176.) Therefore, we previously ordered KJC to serve all documents filed in this proceeding on the parties to the underlying complaint, including the 43 plaintiffs; these real parties in interest have appeared and filed opposition to the petition.

## I. DISCUSSION

KJC's transfer motion was brought pursuant to the following provision of section 394(a):[3] "[A]ny action or proceeding brought *by* a . . . city, . . . *against a resident of another county, city and county, or city, or a corporation doing business in the latter*, shall be, on motion of either party, transferred for trial to a county, or city and county, other than the plaintiff, if the plaintiff is a county, or city and county, and other than that in which the plaintiff is situated, if the plaintiff is a city . . . and other than that in which the defendant resides, or is doing business, or is situated." (Italics added.)

▆▆ The purpose of this portion of section 394(a), is to guard against local bias that may exist in favor of litigants within a county as against those from without the county, and to ensure that both parties have a trial on

---

[3]For contextual purposes, the relevant portions of section 394 provide as follows:

"(a) An action or proceeding against a county, or city and county, a city, or local agency, may be tried in such county, or city and county, or the county in which such city or local agency is situated, unless the action or proceeding is brought by a county, or city and county, a city, or local agency, in which case it may be tried in any county, or city and county, not a party thereto and in which the city or local agency is not situated. Except for actions initiated by the district attorney pursuant to Section 11350, 11350.1, 11475.1, or 11476.1 of the Welfare and Institutions Code, any action or proceeding brought by a county, city and county, city, or local agency within a certain county, or city and county, against a resident of another county, city and county, or city, or a corporation doing business in the latter, shall be, on motion of either party, transferred for trial to a county, or city and county, other than the plaintiff, if the plaintiff is a county, or city and county, and other than that in which the plaintiff is situated, if the plaintiff is a city, or a local agency, and other than that in which the defendant resides, or is doing business, or is situated. Whenever an action or proceeding is brought against a county, city and county, city, or local agency, in any county, or city and county, other than the defendant, if the defendant is a county, or city and county, or, if the defendant is a city, or local agency, other than that in which the defendant is situated, the action or proceeding must be, on motion of the said defendant, transferred for trial to a county, or city and county, other than that in which the plaintiff, or any of the plaintiffs, resides, or is doing business, or is situated, and other than the plaintiff county, or city and county, or county in which such plaintiff city or local agency is situated, and other than the defendant county, or city and county, or county in which such defendant city or local agency is situated; provided, however, that any action or proceeding against the city, county, city and county, or local agency for injury occurring within the city, county, or city and county, or within the county in which such local agency is situated, to person or property or person and property caused by the negligence or alleged negligence of such city, county, city and county, local agency, or its agents or employees, shall be tried in such county, or city and county, or if a city is a defendant, in such city or in the county in which such city is situated, or if a local agency is a defendant, in such county in which such local agency is situated. . . .

"(b) Any court in a county hereinabove designated as a proper county, which has jurisdiction of the subject matter of the action or proceeding, is a proper court for the trial thereof."

This statute has been characterized as " 'complicated' " and a " 'mass of cumbersome phraseology.' " (*County of San Bernardino v. Superior Court* (1994) 30 Cal.App.4th 378, 380 [35 Cal.Rptr.2d 760].)

neutral territory. (*Westinghouse Electric Corp. v. Superior Court* (1976) 17 Cal.3d 259, 266 [131 Cal.Rptr. 231, 551 P.2d 847] (*Westinghouse Electric Corp.*).) Specifically, the local bias protected against is "prejudice resulting from citizens in the county perceiving the trial outcome as tied to their economic interests." (*Nguyen v. Superior Court* (1996) 49 Cal.App.4th 1781, 1790 [57 Cal.Rptr.2d 611] (*Nguyen*), italics omitted.)

While "there is a substantial risk of prejudice in favor of a local governmental entity," the Legislature determined that such prejudice "will be so mitigated that a change of venue normally will not be needed when defendant corporation is 'doing business' in the county." (*Westinghouse Electric Corp., supra*, 17 Cal.3d at p. 271.) When a corporate defendant is viewed as being closely associated with the community, it is less likely that local bias will occur. (*Ibid.*) "[E]ven though taxpayer jurors may be predisposed in favor of [the local governmental entity] because of the potential effect on their taxes, they may overcome that understandable bias if they realize that unjustly favoring [the local governmental entity] will injure a local business and its contribution to the community economy." (*Id.* at p. 272.)

■ Analyzing whether KJC is entitled to transfer the action to a neutral county requires us to resolve three issues:[4] (A) Does section 394, despite its use of the terms "action or proceeding," "plaintiff" and "defendant," nonetheless apply to cross-complaints, cross-complainants, and cross-defendants? (B) Did the trial court properly find that KJC was doing business in Contra Costa County, eliminating its entitlement to a transfer under section 394(a)? (C) Finally, if KJC's cross-complaint should be transferred to a neutral county, should the underlying complaint also be transferred?

A.  *Section 394 Applies to Cross-complaints*

The extent to which section 394 applies to cross-complaints was considered in *City of Chico v. Superior Court* (1979) 89 Cal.App.3d 187 [152 Cal.Rptr. 380] (*City of Chico*). In *City of Chico*, the plaintiffs filed an action in the San Francisco County Superior Court against Southern Pacific Transportation Company (SP), seeking damages arising from a vehicle collision that occurred in the City of Chico (Chico), County of Butte (Butte). SP filed a cross-complaint for indemnity, contribution and declaratory relief against Chico and Butte, alleging that these entities were responsible for the plaintiffs' injuries. (*Id.* at pp. 188-189.)

---

[4]We note that none of the parties dispute the procedural sufficiency of KJC's motion to transfer venue. (See *Ohio Casualty Ins. Group v. Superior Court* (1994) 30 Cal.App.4th 444, 447 [35 Cal.Rptr.2d 771] (*Ohio Casualty Ins. Group*) [party seeking venue change under § 394 must demonstrate that the action was originally filed in a proper county and that the motion was timely].)

Chico and Butte sought a change of venue to the Butte County Superior Court, under the "home county" venue provision of section 394(a), which provides that " 'any action or proceeding against the city, county, city and county, or local agency for injury occurring within the city, county, or city and county, or within the county in which such local agency is situated, to person or property or person and property caused by the negligence or alleged negligence of such city, county, city and county, local agency, or its agents or employees, shall be tried in such county, or city and county, or if a city is a defendant, in such city or in the county in which such city is situated, or if a local agency is a defendant, in such county in which such local agency is situated.' " (*City of Chico, supra,* 89 Cal.App.3d at p. 189, quoting former § 394, subd. (1) [now § 394(a)].)

In upholding the denial of Chico's and Butte's venue motion, *City of Chico* held that the language of section 394 only applies to complaints, and does not extend to cross-complaints against local government.[5] (*City of Chico, supra,* 89 Cal.App.3d at pp. 188-192.)

*City of Chico* was discussed and convincingly refuted some years later in *Ohio Casualty Ins. Group*, which concluded that the *City of Chico* court's interpretation of section 394 to exclude cross-complainants and cross-defendants from the benefits of the statute was erroneous. (*Ohio Casualty Ins. Group, supra,* 30 Cal.App.4th at p. 451.)

In *Ohio Casualty Ins. Group*, Baker Construction Company (Baker) sued the Butte Valley Unified School District (BVUSD) in Siskiyou County, where BVUSD resided. BVUSD filed a cross-complaint against Baker and Baker's insurer, Ohio Casualty Insurance Group (Ohio Casualty). Ohio Casualty later moved for a change of venue to a neutral county under the same portion of section 394 involved in the instant petition. The trial court denied the motion, apparently relying on *City of Chico*. The appellate court reversed, finding that *City of Chico* misconstrued section 394. (*Ohio Casualty Ins. Group, supra,* 30 Cal.App.4th at pp. 446-448.)

The court first employed familiar principles of statutory construction to interpret the language of section 394. *Ohio Casualty Ins. Group* explained that generally, the word "plaintiff" is understood to refer to a complaining party in any litigation, and a cross-complaint is considered to be a separate action from that initiated by a complaint. (*Ohio Casualty Ins. Group, supra,*

---

[5]Arguably, this holding was dicta, given the court's apparent conclusion that the cross-complaint at issue did not fall within the home county venue provision. (*City of Chico, supra,* 89 Cal.App.3d at p. 191.)

30 Cal.App.4th at p. 448.) Given this, the court had no difficulty in concluding that a plaintiff necessarily includes a cross-complainant, and by logical implication, a defendant similarly includes a cross-defendant. (*Id.* at pp. 448-449.) *Ohio Casualty Ins. Group* held that this construction of the terms "plaintiff" and "defendant" in section 394 was consistent with interpretations of a related venue statute, section 396, in which the Legislature acquiesced. (*Ohio Casualty Ins. Group, supra,* at p. 449.) This decision emphasized that the remedial purpose behind section 394—to guard against local prejudices favoring in-county litigants—would "be best served by a liberal construction which would extend the statute's protection to cross-defendants." (*Ohio Casualty Ins. Group, supra,* at p. 449)

*Ohio Casualty Ins. Group* pointed out that *City of Chico*'s literal construction of the words "plaintiff" and "defendant" in section 394 to exclude parties to cross-complaints was, in part, the result of *City of Chico*'s undue reliance on inapposite authority. (*Ohio Casualty Ins. Group, supra,* 30 Cal.App.4th at p. 450.) In particular, *Ohio Casualty Ins. Group* criticized as obscure the following reasoning in *City of Chico*: After *City of Chico* found that the cross-complaint before it was not an action for damages falling within the home county venue provision, but instead an action for indemnity and contribution, it baldly concluded, " 'This view of the language appears to be consonant with the use in the statute of only the words "plaintiff" and "defendant" rather than "cross-complainant" and "cross-defendant," referring to cities, counties and local agencies.' (*City of Chico, supra,* 89 Cal.App.3d at p. 191.)" (*Ohio Casualty Ins. Group, supra,* at pp. 450-451.) Regarding *City of Chico*'s reference to the rule that the words of a statute should be given their ordinary meaning, *Ohio Casualty Ins. Group* observed *City of Chico*'s failure to analyze why the ordinary meaning of the word "defendant" in section 394 does not include a "cross-defendant." (*Ohio Casualty Ins. Group, supra,* at p. 451.)

Insofar as *Ohio Casualty Ins. Group* concerned the same portion of section 394 we consider in this petition, while *City of Chico* addressed section 394's home county venue provision, *the former* is arguably the more directly controlling case. However, it does not seem appropriate to distinguish between *City of Chico* and *Ohio Casualty Ins. Group* on this basis, as both cases appear to construe section 394 as a whole, rather than limiting their discussions to the particular venue provisions at issue.

We are compelled to follow *Ohio Casualty Ins. Group*, as we view its reasoning as more persuasive and consistent with this division's prior recognition "that section 394 should receive a liberal construction that will

promote rather than frustrate the policy behind the law." (*Transamerica Homefirst, Inc. v. Superior Court* (1999) 69 Cal.App.4th 577, 581 [81 Cal.Rptr.2d 705], citing *Westinghouse Electric Corp., supra,* 17 Cal.3d at pp. 266, 268.) Accordingly, we hold that section 394 is applicable to KJC's motion to transfer.

### B.  *KJC Is Not Doing Business in Contra Costa County*

The applicability of section 394 to cross-complaints does not necessarily mean that KJC's motion for change of venue must be granted. Under the statute, a transfer to a neutral county is not proper if KJC was correctly found to be doing business in Contra Costa County.

For purposes of section 394(a), a corporation is doing business in a county "if its activities in the county are substantial enough that the corporation can reasonably be viewed as being intimately identified with the affairs or closely associated with the people of the community." (*Westinghouse Electric Corp., supra,* 17 Cal.3d at p. 271, fn. omitted.) Given that the purpose of section 394 is to prevent a corporate defendant from suffering prejudice in favor of a local governmental entity, the statute should be liberally construed to promote this policy. (*Westinghouse Electric Corp., supra,* at p. 266.)

For instance, in *Westinghouse Electric Corp.,* the defendant corporation, Rohr Industries, Inc. (Rohr), maintained its headquarters and principal place of business in San Diego County, built transit vehicles in San Diego County for the Bay Area Rapid Transit District (BART), and delivered those vehicles to Alameda County. Rohr's contacts with Alameda County for purposes of section 394(a) included Rohr's temporary assignment of two employees to Alameda County, and its occasional purchases of goods and services in Alameda County. (*Westinghouse Electric Corp., supra,* 17 Cal.3d at pp. 271-273.) Our Supreme Court concluded that Rohr could obtain a transfer of venue under section 394 because "[t]hese activities fail to establish, either individually or cumulatively, that Rohr does business in Alameda County." (*Westinghouse Electric Corp., supra,* at pp. 274-275.) Additionally, the court discounted evidence of sales of buses in Alameda County by Rohr's subsidiary, holding that such sales "in no way diminish[] potential prejudice against Rohr," or "put Rohr in close association with the community." (*Id.* at pp. 273-274.)

The reasoning of *Westinghouse Electric Corp.* was extended in *San Francisco Foundation v. Superior Court* (1984) 37 Cal.3d 285 [208 Cal.Rptr. 31, 690 P.2d 1] (*San Francisco Foundation*). In that case, the foundation petitioned to modify the trust it administered to allow the use of trust income

outside of Marin County, the only county designated by the trustor to receive trust funds. Marin County responded by filing motions to remove the foundation as trustee and bar it from using trust funds contrary to the trust, and to disqualify the law firm representing the foundation on conflict of interest grounds. The foundation then sought a transfer to a neutral county under section 394(a). (*San Francisco Foundation, supra,* at pp. 291-292.) While a mechanical application of *Westinghouse Electric Corp.* would have precluded a transfer given the foundation's substantial activities in Marin County, transfer was nonetheless found appropriate, as the Supreme Court held that "the relevant inquiry is whether, in light not only of the status of the foundation but also of the nature of the litigation, the foundation is reasonably likely to be viewed as an outsider." (*San Francisco Foundation, supra,* at pp. 297, 299-300.) In finding that the foundation would likely be viewed as an outsider, the court emphasized that the judgment sought by Marin County (1) was based on conduct of the foundation directed from its principal office outside Marin County, (2) would secure benefits for Marin County residents and prevent those benefits from being shared with residents of other counties, and (3) would have no adverse effect on the foundation's contribution to the county's economy. (*Id.* at pp. 299-301.)

With these rules and policies as background, we now turn to whether KJC was doing business in Contra Costa County for the purposes of section 394. Important to our analysis is a determination of the standard by which we review the trial court's finding that KJC was doing business in Contra Costa County. (See *Lazar v. Hertz Corp.* (1999) 69 Cal.App.4th 1494, 1500 [82 Cal.Rptr.2d 368].)

While the Supreme Court's opinions in *Westinghouse Electric Corp.* and *San Francisco Foundation* suggest application of the de novo standard of review, neither opinion expressly identifies the standard employed. (*Westinghouse Electric Corp., supra,* 17 Cal.3d at pp. 271-275; *San Francisco Foundation, supra,* 37 Cal.3d at p. 301.) In *Westinghouse Electric Corp.,* after the court defined the correct legal test for deciding whether the defendants were doing business in Alameda County, it concluded that the evidence of Rohr's activities in Alameda County did not establish that Rohr did business in that county. (*Westinghouse Electric Corp., supra,* 17 Cal.3d at pp. 269-275.) Similarly, in *San Francisco Foundation,* the court held that the foundation was "entitled as a matter of law to relief under section 394." (*San Francisco Foundation, supra,* 37 Cal.3d at p. 301.)

In 1958, another court considering a section 394(a) motion defined the standard of review as follows: "Upon the issue of change of venue the averments of the affidavit of the prevailing party may be deemed to be the

findings of the court below [citations]; and such findings will not be disturbed on appeal unless it is clear that the order was the result of arbitrary action. [Citations.]" (*City of L. A. v. Pac. Tel. & Tel. Co.* (1958) 164 Cal.App.2d 253, 260-261 [330 P.2d 888] (*City of L.A.*).)

■ More recently, however, our Supreme Court has explained the distinction between questions of law and fact, and the impact of that distinction on principles of appellate review, as follows: "Questions of fact concern the establishment of historical or physical facts; their resolution is reviewed under the substantial-evidence test. Questions of law relate to the selection of a rule; their resolution is reviewed independently. Mixed questions of law and fact concern the application of the rule to the facts and the consequent determination whether the rule is satisfied. If the pertinent inquiry requires application of experience with human affairs, the question is predominantly factual and its determination is reviewed under the substantial-evidence test. If, by contrast, the inquiry requires a critical consideration, in a factual context, of legal principles and their underlying values, the question is predominantly legal and its determination is reviewed independently." (*Crocker National Bank v. City and County of San Francisco* (1989) 49 Cal.3d 881, 888 [264 Cal.Rptr. 139, 782 P.2d 278], citing *People v. Louis* (1986) 42 Cal.3d 969, 985-987 [232 Cal.Rptr. 110, 728 P.2d 180], disapproved on other grounds in *People v. Mickey* (1991) 54 Cal.3d 612, 672, fn. 9 [286 Cal.Rptr. 801, 818 P.2d 84].)

■ Guided by our high court's approach to questions regarding the standard of review, we believe the de novo standard of review applies to this aspect of the trial court's ruling.[6] Whether KJC is entitled to a transfer clearly involves a mixed question of law and fact, and the consequent determination of whether the applicable rule is satisfied. The question before us is predominantly legal, as our application of the facts to the law requires

---

[6]We have considered whether we should review the trial court's ruling under the abuse of discretion standard, because *City of L.A.* could be interpreted as embracing that standard of review. (See *City of L.A., supra,* 164 Cal.App.2d at pp. 260-261 ["[S]uch findings will not be disturbed on appeal unless it is clear that the order was the result of arbitrary action. [Citations.]"]; see also *In re Cortez* (1971) 6 Cal.3d 78, 85 [98 Cal.Rptr. 307, 490 P.2d 819] [abuse of discretion implies absence of arbitrary determination].) We believe that because the portion of section 394(a) before us contains mandatory, not discretionary, language regarding a defendant's right to a transfer where defendant is not doing business in the city's locale, application of the abuse of discretion standard would be inappropriate. (See *Forster v. Superior Court* (1992) 11 Cal.App.4th 782, 787-788, 791 [14 Cal.Rptr.2d 258] [In rejecting argument that the abuse of discretion standard applied to a motion to transfer on the ground that the action had not been filed in the proper court (former § 397, subd. (1) [now § 397, subd. (a)]), the court explained that § 396b, subd. (a) states that the court "shall" order a transfer to the proper court.].)

us to analyze cases construing section 394(a) and the policies underlying that section.

Additionally, de novo review is appropriate where, as here, an appellate court is engaged in the application of a statute to undisputed facts. (*Southern California Edison Co. v. State Board of Equalization* (1972) 7 Cal.3d 652, 659, fn. 8 [102 Cal.Rptr. 766, 498 P.2d 1014]; see *Neecke v. City of Mill Valley* (1995) 39 Cal.App.4th 946, 953 [46 Cal.Rptr.2d 266].)

However, regardless of whether we apply the de novo standard of review or the standard articulated in *City of L.A.*, we conclude that the trial court erred in finding that KJC was doing business in Contra Costa County.

Turning to the facts of this case, KJC's principal place of business and executive office is in San Francisco, and it does not have a business office in Contra Costa County. KJC performs specialized engineering consulting services for governmental entities, agencies, water districts and industry, and does not advertise its services to the general public.

Since 1954, KJC has provided services to Richmond regarding its storm water and wastewater systems. Some of KJC's recent projects with Richmond include: (1) From October 1985 through October 1986, phase II wet weather program improvements totaling $128,000; (2) from January 1989 through June 1995, an on-site/off-site utilization project for $570,000; (3) beginning in February 1991, construction/wastewater management services in the sum of $1,059,000; and (4) from February 1998 through June 2004, a wastewater system improvement program involving evaluation of wastewater and storm water service charges for fiscal years 1998-1999 through 2007-2008 in the amount of $2,348,500.

Currently, KJC is also performing services in Contra Costa County for (1) Burlington Northern Santa Fe's Richmond facility, (2) East Bay Municipal Utility District's Lamorida Recycled Water Project, and (3) Richmond's Wastewater System Improvement Program. In carrying out this work, the bulk of KJC's design and consulting services are performed outside of Contra Costa County, in KJC's San Francisco or Oakland offices.

These activities demonstrate that KJC has obtained business on an ongoing basis relative to projects in Contra Costa County. The quantity and duration of such business, however, is not determinative of whether KJC is doing business in Contra Costa County for the purposes of section 394. In *Westinghouse Electric Corp.,* Rohr's temporary assignment of two employees to Alameda County, its occasional purchase of goods and services in

Alameda County, and its subsidiary's sales of buses in Alameda County were not sufficient to constitute the requisite close association with the local community so as to reduce the statutorily recognized potential prejudice to Rohr. (*Westinghouse Electric Corp.*, *supra*, 17 Cal. 3d. at pp. 273-275.)

It is clear from *Westinghouse Electric Corp.* that it is the quality of the business connections, and not their quantity or duration, that determines whether a party is doing business locally. The qualitative analysis must focus on whether the types of contacts with the county are substantial enough for the company to be reasonably viewed as closely associated with the community. A hypothetical example illustrates this point. A milk producer could regularly, over a long period of time, deliver its products to a school district of a neighboring county, using trucks advertising "X County Farms Milk." The quantity and duration of deliveries would be substantial, but would also be a constant reminder to local residents that an outsider supplies their milk. Thus, should the local school district sue the supplier for knowingly providing tainted milk, it would seem obvious that section 394 would protect the supplier from local prejudice attendant to a trial in the district's locale, notwithstanding the supplier's regular and long-term sales relationship with the county.

The litany of KJC's business activities in Contra Costa County, as described in the record, was not substantial enough for KJC to be reasonably viewed as "being intimately identified with the affairs or closely associated with the people of the community." (*Westinghouse Electric Corp.*, *supra*, 17 Cal.3d at p. 271, fn. omitted.) There is no showing of any presence, behavior, business interest, or other connection from which one could reasonably view KJC as anything more than an outside consultant contractor to Contra County County water-related projects. As for the services KJC currently provides to Contra Costa County entities, nothing in the record refutes KJC's evidence that the bulk of these services are performed in counties other than Contra Costa. Additionally, while KJC's work in Contra Costa County may have affected residents of that county, the *economic benefit* from KJC's work in Contra Costa County flows to KJC's offices located in other counties. (See *Nguyen*, *supra*, 49 Cal.App.4th at p. 1790 ["[W]e could find no case granting a section 394 transfer when the judgment had no potential impact on the fiscal fortunes of the citizens of a county. [Citations.]"].) On this record, KJC's presence in Contra Costa County, and its contribution to the local economy, seems slight.

Richmond argues, however, that KJC's assent to a contractual venue provision specifying Contra Costa County as the venue for any litigation

indicates that KJC does business in Contra Costa County. We disagree. A contractual venue provision does not constitute a close relationship with the community as described in *Westinghouse Electric Corp.*

Richmond next requests that we take judicial notice of a contract entitled "Evaluation of Wastewater and Stormwater Service Charges for Fiscal Years 1998-99 through 2007-2008," and two amendments to that contract, although it acknowledges that the entire contract was not provided to the trial court. We decline to take judicial notice of this contract, as it is "a matter which should have been presented to the trial court for its consideration in the first instance. [Citations.]" (*Brosterhous v. State Bar* (1995) 12 Cal.4th 315, 325-326 [48 Cal.Rptr.2d 87, 906 P.2d 1242].) Even if we were to take judicial notice of the contract, it nevertheless is not probative of KJC's actual presence in Contra Costa County. The contract and its amendments specify the tasks KJC was obligated to undertake for Richmond, but the contract itself does not establish that KJC performed those tasks within the county. Furthermore, although the contract itself states that it was made in Contra Costa County, this recital does not confirm that KJC is doing business in that county within the meaning of section 394(a).

Additionally, we do not consider evidence of KJC's services related to the subject matter of this litigation, as these "are not normally the type of activities that constitute 'doing business' within the purposes of section 394." (*Westinghouse Electric Corp., supra,* 17 Cal.3d at p. 272.) In *Westinghouse Electric Corp.,* as part of its analysis of whether Rohr did business in Alameda County, the Supreme Court excluded from consideration Rohr's work in Alameda County related to the litigation. The court reasoned, in part: "A governmental entity . . . has a presumptive prejudicial advantage in an action it brings in its own county. That advantage is normally presumed mitigated, if not eliminated, when the defendant does business in the county. Thus, even though taxpayer jurors may be predisposed in favor of BART because of the potential effect on their taxes, they may overcome that understandable bias if they realize that unjustly favoring BART will injure a local business and its contribution to the community economy. However, when the defendant corporation has its principal place of business outside of Alameda County and 'does business' in the county only by virtue of its BART contract, no diminution of the presumed bias appears likely. If anything, jurors may be suspected of further bias against the corporate interloper brought in only to work on the BART contract. [¶] Moreover, to include in the definition of doing business in the county all activities relating to the subject matter of the litigation would prevent the use of section 394 by a nonresident corporate defendant in almost any contract action brought by a

governmental entity. . . . The section must be construed to avoid such an untenable consequence." (*Id.* at pp. 272-273.)

Following the reasoning in *Westinghouse Electric Corp.,* we do not take into account evidence regarding KJC's involvement in this lawsuit, including its analysis, expert testimony, and investigation services it provided Richmond regarding the claims in the underlying complaint. Similarly, we do not consider the 1995 contract obligating KJC to perform tasks related to Richmond's emergency storm drainage projects. Even if it could be inferred from the contract that KJC completed the required acts in Contra Costa County, Richmond admits that KJC's performance under the 1995 contract formed the basis of its cross-complaint against KJC. No exceptional circumstances appear in the record justifying our consideration of KJC's litigation-related activities. (*Westinghouse Electric Corp., supra,* 17 Cal.3d at p. 273.)

In addition to the lack of evidence of activities by KJC to tie it to the local community, the allegations in this case further justify a change of venue to a neutral county. Under *San Francisco Foundation,* the relevant inquiry under section 394 includes an analysis of the nature of the litigation as well as the activities of the party seeking a change of venue. The dispute concerned whether a foundation could spend its assets outside of Marin County and involved extreme hostility between Marin County residents and the foundation administrators. Simply put, the foundation was asking the court for authority to spend money outside of Marin County, and the local residents were trying to prevent this from happening. Given the nature of this dispute, the court found it reasonable to conclude that the foundation would be viewed as an outsider to Marin County residents despite the foundation's other connections in the county. (*San Francisco Foundation, supra,* 37 Cal.3d at pp. 297-301.)

Similarly, the nature of this case poses a reasonable risk that KJC would be viewed as an outsider to the Contra Costa County community. The underlying case was brought by 43 local residents against their city government, who claim that their local drainage and flood control systems are defective. Richmond has responded to the residents' complaint by assigning fault for the flood damage to KJC, an outside consultant headquartered and operated largely outside of Contra Costa County. If the underlying action results in a judgment against Richmond, the local taxpayers would shoulder the burden of satisfying that judgment, absent Richmond prevailing on its cross-complaint against KJC. (Cf. *Nguyen, supra,* 49 Cal.App.4th at p. 1790 [transfer inappropriate where a judgment would not translate into a monetary loss for local citizens or impact the economic vitality of the local economy].)

Given this, and because KJC has historically serviced Richmond's wastewater/storm water systems, jurors might be inclined to harbor even greater bias against KJC than would normally apply to an action brought by Richmond against a nonresident corporate defendant. (See *Westinghouse Electric Corp., supra,* 17 Cal.3d at p. 272.) Thus, despite KJC's local ties, there is a substantial risk that jurors in Contra Costa County will view KJC as an outsider to their community, thereby increasing the potential of local bias and heightening the need for a prophylactic transfer under section 394.

■ Given that the record fails to demonstrate a sufficient basis for concluding that KJC's activities were substantial enough to view it as being intimately identified with the affairs or closely associated with the local community, and because the cross-complaint in this case seeks to shift blame from Richmond to KJC, an outside consultant, for what a group of local residents claim are defective drainage and flood control systems, there appears to be a substantial risk of prejudice to KJC in Contra Costa County. As such, KJC is entitled to a change of venue under section 394(a).

C. *The Trial Court Must Decide Whether the Underlying Complaint Should Remain Venued in Contra Costa County, or Whether It Should Be Transferred with the Cross-complaint*

While KJC is entitled to have its cross-complaint transferred to a neutral county under section 394(a), the appropriate disposition of the underlying complaint requires further action by the trial court.

The residents' complaint may be properly venued in Contra Costa County under the home county venue provision of section 394(a). As previously set forth, the home county venue provision provides that any action against a city for negligent injury to person and/or property occurring within the city shall be tried in that city or in the county in which the city is situated. (§ 394(a).) Because the trial court denied KJC's transfer motion, it had no occasion to consider whether the complaint should remain in Contra Costa County under the home county venue provision. If the trial court answers this question in the affirmative, the question of severance must be considered. (See *City of Oakland v. Darbee* (1951) 102 Cal.App.2d 493, 502 [227 P.2d 909] [severance appropriate where parties present competing transfer rights under § 394].)

Therefore, we shall direct the trial court to order the cross-complaint transferred to an appropriate neutral county. (See *County of San Bernardino v. Superior Court, supra,* 30 Cal.App.4th at p. 389 [The trial court has discretion to "choos[e] a neutral county in light of all factors, including the

convenience of both sides." (Italics omitted.)].) As for the complaint, if the trial court concludes that there is no basis for retaining that action in Contra Costa County (see, e.g., §§ 394(a), 1048, subd. (b)), the complaint shall be transferred along with the cross-complaint. If the trial court finds that the complaint should remain venued in Contra Costa County, the parties to the underlying complaint will be free to proceed to trial as scheduled.

## II. DISPOSITION

We have reached our decision after giving notice to all parties that we might act by issuing a peremptory writ in the first instance. (*Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 177-180 [203 Cal.Rptr. 626, 681 P.2d 893].) KJC's entitlement to the relief we grant is clear, and no useful purpose would be served by oral argument. (*Ng v. Superior Court* (1992) 4 Cal.4th 29, 35 [13 Cal.Rptr.2d 856, 840 P.2d 961]; *Lewis v. Superior Court* (1999) 19 Cal.4th 1232, 1236-1237, 1240-1241 [82 Cal.Rptr.2d 85, 970 P.2d 872].)

Therefore, let a peremptory writ of mandate issue commanding respondent Contra Costa County Superior Court, in case No. C97-05272, to (1) set aside and vacate that portion of its March 3, 2000 order which denied KJC's motion to transfer, (2) forthwith hold a hearing to determine whether there is a basis for retaining the underlying complaint in Contra Costa County, and thereafter enter an order ruling on this question, and (3) pursuant to its order regarding the underlying complaint and consistent with the views expressed in this opinion, enter a new and different order granting KJC's motion to transfer the cross-complaint or the entire action to an appropriate neutral county.

City of Richmond's request for judicial notice is denied, for the reasons previously discussed. Kennedy/Jenks Consultants, Inc., is entitled to recover the costs it incurred in this writ proceeding. (Cal. Rules of Court, rule 56.4.)

This decision shall be final as to this court five days from the date of filing, "[t]o prevent any further delay of the proceedings below." (*PH II, Inc. v. Superior Court* (1995) 33 Cal.App.4th 1680, 1683 [40 Cal.Rptr.2d 169]; see Cal. Rules of Court, rule 24(d).)

Jones, P. J., and Stevens, J., concurred.