[No. D050340. Fourth Dist., Div. One. July 13, 2007.]

METROPOLITAN TRANSIT SYSTEM, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
BALFOUR BEATTY/ORTIZ ENTERPRISES, INC., Real Party in Interest.

## COUNSEL

Hecht, Solberg, Robinson, Goldberg & Bagley, James G. Ehlers and Gregory S. Markow for Petitioner.

No appearance for Respondent.

Gill and Baldwin and Kirk S. MacDonald for Real Party in Interest.

## OPINION

**BENKE, J.**—In this case plaintiffs brought a breach of contract action against a San Diego County transportation agency in the Superior Court of San Diego County. In response the transportation agency filed a compulsory cross-complaint against defendants, in which it alleged it overpaid plaintiffs $4 million. Plaintiffs then brought a motion to change venue under Code of Civil Procedure[1] section 394.

In general, when an action is initiated by a local agency in the county where it operates, section 394 permits any defendant who is not a resident of the county to have venue transferred to a neutral county. Finding that cross-defendants may bring a motion under section 394, the trial court granted the motion to change venue. The transportation agency filed a petition for a writ of mandate in which it alleges the trial court erred in granting the motion.

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise specified.

We issued an order to show cause because there is a conflict in the cases as to whether cross-defendants may bring a motion under section 394 and there is no authority discussing the applicability of the statute when, as here, a local agency has brought a compulsory cross-complaint against a plaintiff. We conclude all cross-defendants, whether they are third party cross-defendants or plaintiffs who are the subject of compulsory or permissive cross-complaints, may bring motions under section 394. Accordingly, we deny the petition.

## FACTUAL AND PROCEDURAL BACKGROUND

Petitioner Metropolitan Transportation System (MTS), formerly San Diego Metropolitan Transit Development Board, is, according to its petition, a regional governmental agency and is responsible, in part, for construction of portions of the San Diego trolley system. According to MTS's petition, real party in interest Balfour Beatty/Ortiz Enterprises, Inc. (BBO), is an unincorporated joint venture composed of Balfour Beatty Construction, Inc., a Delaware corporation, and Ortiz Enterprises, Inc., a California corporation. Balfour Beatty Construction, Inc.'s principal place of business is located in Solano County; Ortiz Enterprises, Inc.'s principal place of business is located in Orange County; BBO has no offices of its own and no employees of its own, but instead uses employees and offices of the joint venturers.

BBO was one of the principal contractors on the La Mesa extension of MTS's Mission Valley trolley line. BBO commenced these proceedings by filing a complaint against MTS in the Superior Court of San Diego County. The complaint alleged that because of design deficiencies for which MTS was responsible and other failures of the agency, BBO was entitled to not less than $16 million in additional compensation under its contract with MTS.

In response to BBO's complaint, MTS filed an answer and a cross-complaint, in which it alleged that it overpaid BBO $4 million. In addition to BBO, MTS named Balfour Beatty Construction, Inc., and Ortiz Enterprises, Inc., as cross-defendants.

BBO, Balfour Beatty Construction, Inc., and Ortiz Enterprises, Inc., moved to change venue under section 394.[2] In general, section 394 provides that

---

[2] Section 394 provides: "(a) An action or proceeding against a county, or city and county, a city, or local agency, may be tried in the county, or city and county, or the county in which the city or local agency is situated, unless the action or proceeding is brought by a county, or city and county, a city, or local agency, in which case it may be tried in any county, or city and county, not a party thereto and in which the city or local agency is not situated. Except for actions initiated by the local child support agency pursuant to Section 17400, 17402, 17404, or 17416 of the Family Code, any action or proceeding brought by a county, city and county, city,

where an action brought by a county, municipality or local agency has been initiated in the county where the plaintiff agency is situated, a defendant who is not a resident of the plaintiff's county may move to transfer the case to a neutral county. (See *San Francisco Foundation v. Superior Court* (1984) 37 Cal.3d 285, 296 [208 Cal.Rptr. 31, 690 P.2d 1]; *Ohio Casualty Ins. Group v. Superior Court* (1994) 30 Cal.App.4th 444, 448 [35 Cal.Rptr.2d 771] (*Ohio Casualty*).)

Prior to the hearing on the motion, MTS dismissed Balfour Beatty Construction, Inc., and Ortiz Enterprises, Inc., as cross-defendants. In opposing

---

or local agency within a certain county, or city and county, against a resident of another county, city and county, or city, or a corporation doing business in the latter, shall be, on motion of either party, transferred for trial to a county, or city and county, other than the plaintiff, if the plaintiff is a county, or city and county, and other than that in which the plaintiff is situated, if the plaintiff is a city, or a local agency, and other than that in which the defendant resides, or is doing business, or is situated. Whenever an action or proceeding is brought against a county, city and county, city, or local agency, in any county, or city and county, other than the defendant, if the defendant is a county, or city and county, or, if the defendant is a city, or local agency, other than that in which the defendant is situated, the action or proceeding must be, on motion of that defendant, transferred for trial to a county, or city and county, other than that in which the plaintiff, or any of the plaintiffs, resides, or is doing business, or is situated, and other than the plaintiff county, or city and county, or county in which that plaintiff city or local agency is situated, and other than the defendant county, or city and county, or county in which the defendant city or local agency is situated; provided, however, that any action or proceeding against the city, county, city and county, or local agency for injury occurring within the city, county, or city and county, or within the county in which the local agency is situated, to person or property or person and property caused by the negligence or alleged negligence of the city, county, city and county, local agency, or its agents or employees, shall be tried in that county, or city and county, or if a city is a defendant, in the city or in the county in which the city is situated, or if a local agency is a defendant, in the county in which the local agency is situated. In that action or proceeding, the parties thereto may, by stipulation in writing, or made in open court, and entered in the minutes, agree upon any county, or city and county, for the place of trial thereof. When the action or proceeding is one in which a jury is not of right, or in case a jury is waived, then in lieu of transferring the cause, the court in the original county may request the chairperson of the Judicial Council to assign a disinterested judge from a neutral county to hear that cause and all proceedings in connection therewith. When the action or proceeding is transferred to another county for trial, a witness required to respond to a subpoena for a hearing within the original county shall be compelled to attend hearings in the county to which the cause is transferred. If the demand for transfer is made by one party and the opposing party does not consent thereto, the additional costs of the nonconsenting party occasioned by the transfer of the cause, including living and traveling expenses of the nonconsenting party and material witnesses, found by the court to be material, and called by the nonconsenting party, not to exceed five dollars ($5) per day each in excess of witness fees and mileage otherwise allowed by law, shall be assessed by the court hearing the cause against the party requesting the transfer. To the extent of that excess, those costs shall be awarded to the nonconsenting party regardless of the outcome of the trial. This section shall apply to actions or proceedings now pending or hereafter brought.

"(b) For the purposes of this section, 'local agency' shall mean any governmental district, board, or agency, or any other local governmental body or corporation, but shall not include the State of California or any of its agencies, departments, commissions, or boards."

the motion to change venue, MTS argued section 394 provides no relief to litigants, such as BBO, who initiated an action and are the subject of a local agency's compulsory cross-complaint. In addition, MTS argued BBO in fact was a resident of San Diego County for purposes of applying section 394 and hence not entitled to relief under the statute.

The trial court granted the motion. MTS filed a timely petition for a writ of mandate. Because there is some conflict within existing authority and no case which deals directly with a local agency which has brought a compulsory cross-complaint, we issued an order to show cause.[3]

## DISCUSSION

## I

In *Westinghouse Electric Corp. v. Superior Court* (1976) 17 Cal.3d 259 [131 Cal.Rptr. 231, 551 P.2d 847] (*Westinghouse*), the court discussed the general principles which govern application of section 394. In *Westinghouse* a local transportation agency, the Bay Area Rapid Transit District (BART), sued one of its contractors, the Rohr Corporation (Rohr), whose principal place of business was in San Diego County. Rohr moved to change venue under section 394 from Alameda County, where BART conducted a large part of its operations, to a neutral county. BART argued that because it was a multi-county agency, it was not subject to the literal terms of section 394 and because Rohr performed a substantial amount of its work for BART in Alameda County, Rohr was not entitled to the benefits of the statute. The court rejected BART's arguments and directed the action be transferred to a neutral county.

In considering BART's argument that section 394 did not apply to multi-county agencies, the court noted both BART's interpretation of the statute and Rohr's were consistent with the manner in which the section 394 was drafted. (*Westinghouse, supra,* 17 Cal.3d at pp. 265–266.) In adopting Rohr's interpretation, the court found Rohr's interpretation was more consistent with the fundamental purpose of the statute: "The purpose of section 394 ' "is to guard against local prejudices which sometimes exist in favor of litigants within a county as against those from without and to secure to both parties to a suit a trial upon neutral grounds." ' [Citation.] *As the statute is remedial in its purpose, it should receive a liberal construction which will promote rather than frustrate the policy behind the law.* [Citations.]" (*Westinghouse, supra,* 17 Cal.3d at p. 266, italics added.)

---

[3] We also issued a stay, which we vacate. (See, *post,* at p. 306.)

The court also rejected BART's contention that Rohr was doing business in Alameda County within the meaning of section 394. In doing so the court found "doing business" for purposes of applying section 394 had a particular meaning consistent with the fundamental purpose of the statute to protect litigants from local bias. The court stated: "The legislation is based on the premise that there is a substantial risk of prejudice in favor of a local governmental entity. It is also apparently the judgment of the Legislature that any prejudice in favor of a governmental entity plaintiff will be so mitigated that a change of venue normally will not be needed when defendant corporation is 'doing business' in the county. It is apparent that 'doing business,' viewed in the perspective of guaranteeing a defendant a fair trial, relates to defendant's image in the community. If defendant is viewed as an outside corporation, then diminution of the presumed prejudice is unlikely to occur. If, on the other hand, defendant is viewed as closely associated with the community, there is less likelihood of the local bias that section 394 is designed to prevent. We therefore conclude that a corporation is doing business in a county for purposes of section 394 only if its activities in the county are substantial enough that the corporation can reasonably be viewed as being intimately identified with the affairs or closely associated with the people of the community. Under this standard, a corporation with its main place of business in the county in which it is sued cannot invoke section 394. Likewise, a corporation with a major branch office in the county would be denied the benefits of the statute. But a corporation with its principal place of business elsewhere and with only limited contacts in a county may obtain a change of venue in an action brought by a local governmental entity." (*Westinghouse, supra,* 17 Cal.3d at p. 271, fn. omitted.)

In applying this standard to Rohr, the court found that Rohr's performance of the BART contract, which involved considerable activities in Alameda County, did not constitute doing business for purposes of applying section 394. "Services related to the subject matter of particular litigation are not normally the type of activities that constitute 'doing business' within the purposes of section 394. A governmental entity, it will be remembered, has a presumptive prejudicial advantage in an action it brings in its own county. That advantage is normally presumed mitigated, if not eliminated, when the defendant does business in the county. Thus, even though taxpayer jurors may be predisposed in favor of BART because of the potential effect on their taxes, they may overcome that understandable bias if they realize that unjustly favoring BART will injure a local business and its contribution to the community economy. However, when the defendant corporation has its

principal place of business outside of Alameda County and 'does business' in the county only by virtue of its BART contract, no diminution of the presumed bias appears likely. If anything, jurors may be suspected of further bias against the corporate interloper brought in only to work on the BART contract.

"Moreover, to include in the definition of doing business in the county all activities relating to the subject matter of the litigation would prevent the use of section 394 by a nonresident corporate defendant in almost any contract action brought by a governmental entity. A motion under section 394 to transfer venue presupposes that the action was originally brought in a proper court. Under section 395.5, the proper forum for a contract action against a corporation is the corporation's principal place of business or the place where the contract is to be performed. If the suit is brought in the principal place of business of a corporate defendant, section 394 will of course be inapplicable. If the suit is brought where the contract is to be performed and performance constitutes 'doing business' in the county, then the defendant will have no recourse to section 394. The section must be construed to avoid such an untenable consequence." (*Westinghouse, supra,* 17 Cal.3d at pp. 272–273.)

Although it was decided after *Westinghouse,* the opinion in *City of Chico v. Superior Court* (1979) 89 Cal.App.3d 187 [152 Cal.Rptr. 380] (*City of Chico*) did not cite *Westinghouse* or consider its holding that in light of section 394's remedial purpose the statute must be construed liberally. Without extensive discussion, the court in *City of Chico* held section 394 did not apply to a cross-complaint for indemnity. (*City of Chico,* at pp. 191–192.) In *Ohio Casualty, supra,* 30 Cal.App.4th at page 451, the court squarely rejected the holding of *City of Chico.* In *Ohio Casualty* a school district was sued by a contractor; the school district brought a cross-complaint against the contractor and the insurer which issued the contractor's performance bonds. The insurer brought a motion under section 394, which the trial court denied. In directing the motion be granted, the Court of Appeal found that in using the words "plaintiff" and "defendant" in section 394, the Legislature intended to encompass cross-complainants and cross-defendants. " ' "[P]laintiff" is commonly understood by both the legal community and the general public to mean "the complaining party in any litigation . . . ." [Citations.]' [Citation.]

"A cross-complaint is generally considered to be a separate action from that initiated by the complaint. (§ 428.10 [cross-complainant may set forth *any* cause of action against any party who filed complaint or cross-complaint against him, *or* any cause of action against a person *not already a party to*

*action* if cross-complainant's cause of action arises out of same transaction as original complaint or asserts claim, right, or interest in subject of that complaint]; [citations]; see also Cal. Law Revision Com. com., 14A West's Ann. Code Civ. Proc. (1971 ed.) § 428.20, p. 228 [joinder of person as cross-party], setting forth 'the general principle that a cross-complaint is to be treated as if it were a complaint in an independent action.') Thus, the common understanding of 'plaintiff'—i.e., ' "the complaining party in any litigation" ' [citation]—necessarily includes 'cross-complainant,' a proposition which logically implies that 'defendant' also includes 'cross-defendant.'

"Moreover, the terms 'plaintiff' and 'defendant' have been construed to include 'cross-complainant' and 'cross-defendant' in a related venue statute, section 396 (transfer of case when filed in court lacking jurisdiction). [Citations.] This judicial construction of these terms in section 396, to which the Legislature has acquiesced, is a powerful argument for construing them the same way in section 394. [Citation.]" (*Ohio Casualty, supra*, 30 Cal.App.4th at pp. 448–449.)

In finding a cross-defendant could make a motion under section 394, the court in *Ohio Casualty* also relied upon the remedial purpose of the statute as set forth in *Westinghouse*. "Since 'local prejudices . . . in favor of litigants within a county as against those from without' may work as vigorously against cross-defendants as against defendants, the remedial purpose of section 394 appears to be best served by a liberal construction which would extend the statute's protection to cross-defendants." (*Ohio Casualty, supra*, 30 Cal.App.4th at p. 449.)

In *Kennedy/Jenks Consultants, Inc. v. Superior Court* (2000) 80 Cal.App.4th 948, 955 [95 Cal.Rptr.2d 817], a city was sued by residents for flood damage caused by an allegedly faulty storm drainage system. The city brought a cross-complaint against a corporation which provided the city with storm drainage consulting services. The corporation brought a motion to transfer under section 394. The trial court denied the motion and the Court of Appeal, relying on *Ohio Casualty*, granted the corporation's petition for a writ. "We are compelled to follow *Ohio Casualty Ins. Group*, as we view its reasoning as more persuasive and consistent with this division's prior recognition 'that section 394 should receive a liberal construction that will promote rather than frustrate the policy behind the law.' [Citation.]" (80 Cal.App.4th at pp. 956–957.)

## II

In light of the foregoing, we reject MTS's contention that as a cross-defendant BBO had no standing under section 394. As the court in *Ohio Casualty* pointed out, in a wide variety of contexts, including the related venue provisions of section 396, the cases have consistently treated the terms "plaintiff" and "defendant" as encompassing "cross-complainants" and "cross-defendants." (*Ohio Casualty, supra,* 30 Cal.App.4th at p. 449.) Of some additional significance is the " 'the general principle that a cross-complaint is to be treated as if it were a complaint in an independent action.' " (*Ibid.,* quoting Cal. Law Revision Com. com., 14A West's Ann. Code Civ. Proc. (1971 ed.) § 428.20, p. 228.) These well-established principles, considered in the context of the requirement that the statute be liberally construed, persuade us, like the courts in *Ohio Casualty* and *Kennedy/Jenks Consultants, Inc. v. Superior Court,* to adopt an interpretation of the statute which affords its remedial provisions to cross-complainants and cross-defendants as well as plaintiffs and defendants.

We understand that unlike the moving parties in *Ohio Casualty* and *Kennedy/Jenks Consultants, Inc. v. Superior Court,* BBO was the initial plaintiff in this action, rather than a third party cross-defendant. We also accept that MTS's cross-complaint was compulsory. However, contrary to MTS's argument, these facts do not prevent BBO from availing itself of the protection otherwise provided by section 394. First, we note BBO had no choice with respect to the venue of its initial complaint. San Diego, as the residence of MTS and the place where the contract was made and performed, was the only appropriate venue for BBO's complaint. (See *Skidmore v. County of Solano* (1954) 128 Cal.App.2d 391, 393, fn. 2 [275 P.2d 613].) The fact that as plaintiff BBO elected to bring this action and thus was not in a purely defensive position, as were the cross-defendants in *Ohio Casualty* and *Kennedy/Jenks Consultants, Inc. v. Superior Court,* does not provide any rationale for excluding it from the scope of section 394. We are unaware of any reason a litigant who believes it has a valid claim against a local agency should be penalized for prosecuting that valid claim. In this regard there is nothing on the face of the statute or in its history which suggests a litigant with a valid claim against a local agency is required to forgo asserting that claim in order to avoid trial of the local agency's cross-complaints in a biased venue.

In this regard we note that had MTS initiated this action in San Diego, as it could because this was the place the contract was made and

performed, and BBO filed a compulsory cross-complaint, MTS would not be able to question BBO's right to transfer the action to a neutral county. As a defendant, BBO would have the express right to protect itself from local bias by moving for a transfer under section 394 without losing the right to assert its substantial claims against MTS. The risk of local bias, which is the subject of section 394, is not diminished by the fact that in fact BBO initiated this action and MTS asserted its claims by way of a cross-complaint. Thus to accept MTS's argument we would have to find that for no apparent reason, the Legislature intended litigants prosecuting identical claims and facing precisely the same risk of local bias would not have the same protection under the statute. As the court in *Westinghouse* noted, section 394 must be construed to avoid untenable consequences. (*Westinghouse, supra*, 17 Cal.3d at pp. 272–273.)

MTS's reliance on dicta in *K.R.L. Partnership v. Superior Court* (2004) 120 Cal.App.4th 490, 502–503 [15 Cal.Rptr.3d 517] (*K.R.L. Partnership*), is unpersuasive. In *K.R.L. Partnership* the plaintiffs brought an action against the defendant and it was transferred to the county where he was resident; following the transfer, the defendant then brought a compulsory cross-complaint against the plaintiffs. Arguing that the venue for the cross-complaint was improper, the plaintiffs then moved under the provisions of section 396, subdivision (a), to transfer the action to the county where they resided. In general, section 396, subdivision (a), gives a defendant the right to transfer an action when it has not been brought in the proper venue. The plaintiffs argued that for purposes of section 396 the cross-complaint should have been treated as a separate complaint; and in making this argument, they relied on *Ohio Casualty*'s interpretation of section 394. The court rejected the plaintiff's argument and found *Ohio Casualty* had no bearing on interpretation of section 396, especially because the cross-complaint it was considering was compulsory.

We agree with the holding in *K.R.L. Partnership* and we also agree that for purposes of applying section 396 the fact that a cross-complaint is compulsory is of some significance. As the court in *K.R.L. Partnership* explained, giving the plaintiffs a right to transfer venue under section 396 based on the defendant's compulsory cross-complaint would defeat the defendant's right to have the complaint against him tried in the county of *his* residence. (*K.R.L. Partnership, supra*, 120 Cal.App.4th at pp. 503–505.) However, unlike section 396, which is concerned with venue in general, section 394 embodies the Legislature's more specific concern about the risk of bias in favor of local agencies when they are prosecuting claims in the counties where they reside. (*Westinghouse, supra*, 17 Cal.3d at p. 266.) As we

have discussed, those concerns about bias are not related to whether a complaint is compulsory or permissive. For purposes of applying section 394, the significant question is whether a local agency is asserting a claim in the county where it resides against a nonresident of that county. Because that is the case here, BBO had the right to move for a change of venue.

## III

We now turn to MTS's alternative contention that BBO has done business in San Diego to such an extent it is a resident of the county for purposes of applying section 394.

BBO's only contact with San Diego County was performance of the MTS contract. BBO has no office of its own but uses offices of Ortiz Enterprises, Inc., located in Orange County. The two corporations which make up the unincorporated association have their principal places of businesses in Solano County and Orange County. According to a declaration submitted by an officer of Balfour Beatty Construction, Inc., the corporation did not do any business in San Diego County other than by way of BBO's work for MTS. According to a declaration submitted by one of its officers, Ortiz Enterprises, Inc., had a total revenue of $339 million over the 10 years between 1996 and 2006; in addition to the revenue attributable to the BBO contract with MTS, Ortiz Enterprises, Inc., performed two other construction contracts in San Diego, one 2002 contract for $4.5 million and a 2005 contract for $9.4 million.

On this record neither BBO, Balfour Beatty Construction, Inc., nor Ortiz Enterprises, Inc., has a presence in San Diego such that any one of them is "intimately identified with the affairs or closely associated with the people of the community." (*Westinghouse, supra*, 17 Cal.3d at p. 271, fn. omitted.) In nonetheless arguing that BBO is a resident of San Diego County for purposes of applying section 394, MTS relies on the following statement the court made in *Westinghouse*: "We can, perhaps, hypothesize exceptional circumstances in which activities relating to the subject matter of the litigation under consideration might be weighed in the determination whether a corporation is doing business in a county. If, for example, a corporation were formed in Alameda County solely to work on the BART project, failure to consider its BART-related activities would lead to a conclusion that it does business in no county. Similarly, if Rohr established a major manufacturing division in Alameda County to build the transit vehicles and retained its plant there for several years, it might arguably be viewed as being closely associated with the community. But we are presented with neither of those situations. Rohr

maintains its principal place of business in San Diego County and built the transit vehicles there. Its inevitable and incidental contacts with Alameda County in delivering the vehicles must be discounted in the determination whether the company does business in the county." (*Westinghouse, supra*, 17 Cal.3d at p. 273.)

Neither one of the two hypotheticals considered by the court in *Westinghouse* has any application here. If BBO were in fact incorporated, the practical problem discussed in the first hypothetical, the absence of any county where it does business and hence the practical necessity that we consider its contract related activities, might arise. However, BBO is an unincorporated association and hence actions against it are proper in any county where any member of the association or partnership is a resident. (See *Carruth v. Superior Court* (1978) 80 Cal.App.3d 215, 223 [145 Cal.Rptr. 344].) Thus, if BBO were sued by a local agency in either Solano County or Orange County, those local agencies would have a persuasive defense to any section 394 motion. In short, unlike the hypothetical corporation considered in the first *Westinghouse* hypothetical, we are not confronted with an entity which would have no place of business for venue purposes unless we consider its contract-related activities.

The second hypothetical has no application because at most one can argue that BBO is a branch or division of either Balfour Beatty Construction, Inc., or Ortiz Enterprises, Inc. However, given the overwhelming size of both corporations' activities outside of San Diego County, and the limited duration of the construction contract BBO performed for MTS, even considered as a branch or division of either corporation, BBO cannot be considered as closely associated with San Diego County for purposes of applying section 394.

In sum, BBO was not a resident of San Diego County for purposes of applying section 394.

## CONCLUSION

■ The trial court acted properly in granting BBO's motion to transfer this case to a neutral county under section 394. The protection provided by the statute is available to cross-defendants such as BBO, who are not residents of the county in which the action is pending at the time they move to transfer.

## DISPOSITION

The petition is denied. The stay issued on March 15, 2007, is vacated.

BBO to recover its costs.

McConnell, P. J., and Huffman, J., concurred.